Jennifer HOPKINS *v.* ARKANSAS DEPARTMENT of
HUMAN SERVICES and M.J., C.J., and C.J.,
*Minor Children*

CA 01-960                                    83 S.W.3d 418

Court of Appeals of Arkansas
Division IV
Opinion delivered August 28, 2002

*Richard Neil Rosen*, for appellant.

*Dana McClain*, for appellee Arkansas Department of Human Services.

*Stasia D. Burk*, attorney *ad litem*, for appellee minor children.

JOSEPHINE LINKER HART, Judge. Appellant, Jennifer Hopkins, appeals the circuit court's adjudication of her seven-year-old son, M.J., as dependent-neglected, arguing that there was insufficient evidence to support the adjudication. Appellant also raises two evidentiary arguments, first arguing that the court erred in admitting certain medical records over her hearsay objection and second arguing that the court abused its discretion in permitting a physician to render an opinion regarding burns suffered by M.J. even though the doctor was not qualified as an expert witness. We affirm.

A "dependent-neglected juvenile" is defined in pertinent part as "any juvenile who as a result of abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness is at substantial risk of serious harm." Ark. Code Ann. § 9-27-303(15)(A) (Supp. 1999).[1] "Neglect" includes acts or omissions of a parent that constitute "[f]ailure to appropriately supervise the juvenile which results in the juvenile's being left alone at an inappropriate age or inappropriate circumstances which put the juvenile in dan-

---

[1] This provision was amended effective August 13, 2001, by Act 1503 of 2001, after the notice of appeal was filed in this matter, and now defines a "dependent-neglected juvenile" as "any juvenile who as a result of abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness *to the juvenile, a sibling, or another juvenile* is at substantial risk of serious harm." Ark. Code Ann. § 9-27-303(16)(A) (Repl. 2002) (emphasis added). Appellee Arkansas Department of Human Services incorrectly cites to the more recent version of this statute. We also note that Act 1610 of 2001, approved four days after Act 1503 was approved, does not contain this language. Further, while the court found that appellant's two other children, C.J. and C.J., were dependent-neglected because they were at substantial risk of harm based on the injury inflicted on M.J., appellant does not make any argument on appeal regarding the adjudication of the siblings as dependent-neglected on this basis.

ger. . . ." Ark. Code Ann. § 9-27-303(33)(G) (Repl. 2002) (amending Ark. Code Ann. § 9-27-303(27)(G) (Supp. 1999)).

■■ Dependency–neglect must be established by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B) (Repl. 2002). "We review a chancellor's findings of fact *de novo*, and will not set them aside unless they are clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses." *Brewer v. Arkansas Dep't of Human Servs.*, 71 Ark. App. 364, 367-68, 43 S.W.3d 196, 199 (2001). "A finding is clearly erroneous when, although there is evidence to support the finding, after reviewing all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* at 368, 43 S.W.3d at 199.

At the adjudication hearing, appellee Arkansas Department of Human Services (DHS) presented testimony from Dr. Jeannie Doland, a resident at the University of Arkansas for Medical Sciences (UAMS). Dr. Doland testified that in the early hours of May 20, 2001, while on call for the burn unit at Arkansas Children's Hospital (ACH), she treated M.J. for second–degree burns to his buttocks. She testified that the burns were consistent with a scald burn. Dr. Doland further testified that appellant told her that she did not witness the injury, but that she had sent him to take a bath, that he had slipped and fallen into the bathtub, and that he was burned by the water in the bathtub. The doctor, however, concluded that the explanation was not consistent with the injury. She noted that the burn was localized, and she could not imagine how a child could fall in this way and sustain only a localized injury. On cross–examination, however, Dr. Doland admitted that it was possible that the injury could have occurred if the child fell·in the bathtub with only his buttocks touching the water. Dr. Doland also noted that red marks on the edges of the scald wound were consistent with friction burns, such as those that could be caused by an object small in diameter, like a cord or fishing pole, moving at a rapid velocity. She testified that the marks were inconsistent with a scald burn or a fall in a bathtub, and no other explanation was given to her.

DHS further presented testimony from a child-abuse investigator with the Arkansas State Police, who testified about his examination of the plumbing at the residence where M.J.'s injury occurred. According to him, the temperature of the water coming out of the bathtub's faucet was 158 degrees. He testified that while the hot-water faucet handle had a regular handle on it, a vise grip served as the cold-water faucet handle. He further testified that he did not believe that a child of M.J.'s age would have any difficulty using the vise grip to turn on the cold water, but he also stated that a child should be supervised around such hot water. The investigator further testified that the water was hot enough to burn a person because, while he was running water, he scalded his own finger. At one point during his testimony, he described the child's injury as "accidental," but further stated that he did not complete the investigation and could not make a final determination.

Diane Tillman, who is appellant's mother-in-law and M.J.'s grandmother, testified for appellant. She stated that on May 19, 2001, appellant and her children came to her residence for a barbeque. Appellant, who remained in a front room in the house, told M.J. and one of her other children to take a bath. M.J. subsequently returned to appellant while wearing a towel, and appellant discovered that M.J. had been burned. Appellant later took M.J. to the hospital. Appellant's sister-in-law, Christine Hopkins, who was also in the residence when M.J. was injured, testified that M.J. would not have known how to turn on the cold water.

M.J. also testified at the hearing. He testified that he was burned when he slipped from the side of the bathtub and fell into the hot water while turning off the water. He further stated that he had turned on the water and had run only hot water into the bathtub. He further testified that he did not know what caused the other marks on his buttocks. He also recalled that he had previously told other persons that his brother had pushed him into the bathtub.

In its adjudication order filed July 23, 2001, the circuit court held that M.J. and appellant's two other children, C.J. and C.J., were dependent-neglected and in need of services from DHS.

The court further concluded that return of the children to appellant would be contrary to the welfare of the children and that continuation of custody with DHS was in the best interests of and necessary for the protection of the children. In reaching its decision, the court noted that while the court "may not be able to ascertain who inflicted the burn injury to [M.J.], the Court can determine that the injury is at variance with the history given." The court found that the "explanation given that this child lowered himself into scalding water and then pulled himself out without any splash marks to not be plausible based on the injury and the child's size and age." The court further concluded that "at the very least we have a mother who, due to her lack of supervision of this child, was negligent and therefore, had a part in this incident, either based on her lack of concern for the child's physical safety, or possibly her failure to protect him." The court also found that M.J.'s two siblings, C.J. and C.J., were "at substantial risk of harm based on the injury inflicted on" M.J. and that it was not safe to return the children to the mother's care until services were provided.

On appeal, appellant argues that the circuit court's finding that M.J. was dependent-neglected is clearly erroneous. She argues that Dr. Doland's testimony regarding whether the history given was inconsistent with M.J.'s injuries was contradictory and therefore insufficient to establish that M.J. was dependent-neglected. Appellant further asserts that there was no evidence that she was aware of the extreme hot-water temperature or knew of the vise grip handle controlling cold water, as the injury occurred during a visit to her mother-in-law's residence while appellant was in another room.

Ironically, appellant's later assertion arguably supports the circuit court's finding that M.J. was dependent-neglected. As previously noted, "neglect" includes acts or omissions of a parent which constitute "[f]ailure to appropriately supervise the juvenile which results in the juvenile's being left alone at an inappropriate age or inappropriate circumstances which put the juvenile in danger. . . ." Ark. Code Ann. § 9-27-303(33)(G) (Repl. 2002) (amending Ark. Code Ann. § 9-27-303(27)(G) (Supp. 1999). Appellant sent M.J. unsupervised into an unexamined bathroom

to bathe without determining the temperature of the hot water or whether the plumbing functioned properly, resulting in the child suffering second-degree burns. As the circuit court found, there was evidence that appellant failed to supervise the child and therefore acted negligently. Thus, we conclude that the circuit court did not clearly err in adjudicating M.J. dependent-neglected. We further note that appellant makes no argument regarding whether the circuit court properly found her other two children dependent-neglected.

Next, appellant argues on appeal that the court erred in admitting medical records over her hearsay objection. She contends that while the Hospital Records Act permits such records to be authenticated by affidavit without the custodian's presence, the records were still subject to being excluded as inadmissible hearsay.

A court's rulings on the admissibility of evidence will not be reversed absent a manifest abuse of discretion. *Lovell v. Beavers*, 336 Ark. 551, 553-54, 987 S.W.2d 660, 661 (1999). We note that the Hospital Records Act provides in pertinent part as follows:

> The copy of the record shall be admissible in evidence to the same extent as though the original record was offered and the custodian had been present and testified to the matters stated in the affidavit.

Ark. Code Ann. § 16-46-306 (Repl. 1999). In interpreting the Act, and contrary to appellant's argument that the Act does not create an exception to the rule against admission of hearsay, the Arkansas Supreme Court has in effect stated that the Act is such an exception. *Lovell*, 336 Ark. at 555-56, 987 S.W.2d at 662-63. While other objections may have sufficed to exclude certain portions of the medical records, *see Lovell, supra*, such objections were not made here. We conclude that the court did not abuse its discretion in admitting the medical records into evidence.

Third, appellant argues that the court erred in allowing Dr. Doland to give her medical opinion regarding the nature of M.J.'s burns because she was never qualified as an expert witness. At the adjudication hearing, Dr. Doland testified that she was a resident at UAMS and was currently working in the burn unit at ACH.

She testified that she attended medical school at the University of Texas medical branch in Galveston, began her surgical residency at Baylor College of Medicine, and transferred to UAMS to complete her surgical residency. Dr. Doland stated that she was a third-year surgical resident in a five-year residency and that the burn unit is a surgical service. At the time she treated M.J., however, she was not assigned to the burn unit, but was on call for the burn unit. After treating appellant, she reported to the attending physician for the burn unit, who continued M.J.'s treatment. She treated M.J. for approximately six hours. She testified that she was currently on rotation in the burn unit at ACH and had been working there for a month. On cross-examination, appellant asked Dr. Doland whether she had any specialized training in treatment or diagnosis of burns. Dr. Doland testified that this was part of her medical training in medical school and part of her residency.

Despite appellant's argument that Dr. Doland must be qualified as an expert to render a medical opinion regarding M.J.'s burns, the court concluded that such qualification was not required. Appellant cites to various instances where Dr. Doland testified regarding M.J.'s burns. In sum, Dr. Doland testified that the burn was limited to the buttocks, that the history given was that the child slipped and fell into the bathtub, and that the history was inconsistent with the burn because the burn should have been more extensive. Dr. Doland further stated that the red marks found on the child's buttocks were inconsistent with a scald burn and appeared to be friction burns.

We note that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Ark. R. Evid. 702 (2002). However, "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) Rationally based on the perception of the witness; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue." Ark. R. Evid. 701 (2002). The "rational connection test"

of Rule 701 requires that the opinion or inference is one that a normal person would form on the basis of the observed facts. *Carton v. Mo. Pac. R.R. Co.*, 303 Ark. 568, 571-72, 798 S.W.2d 674, 675 (1990). We will not reverse a court's decision to admit relevant evidence absent an abuse of discretion. *Moore v. State*, 323 Ark. 529, 549, 915 S.W.2d 284, 295 (1996).

■ We cannot say that the court abused its discretion in permitting Dr. Doland to testify without first requiring DHS to qualify her as an expert witness. In our view, Dr. Doland's opinion that someone would have more extensive burns if they fell into a bathtub of scalding water is an opinion that a normal person could form on the basis of the observed facts. *See Carton*, 303 Ark. at 572, 798 S.W.2d at 676 (holding that "opinion that fuel oil on her shoes caused her to fall is one which a normal person would form on the basis of observed facts"). Moreover, appellant cross-examined Dr. Doland on the facts underlying her observation, forcing Dr. Doland to concede the possibility that, under certain circumstances, the burns could have been localized.

■ As for Dr. Doland's conclusion that the red marks were "friction burns," we note that appellant asked Dr. Doland if she had any specialized training in treatment or diagnosis of burns, and Dr. Doland replied that this was part of her medical training in medical school and part of her residency and that at the time of the hearing she was on rotation in the burn unit. The Arkansas Supreme Court has held that persons with particularized knowledge may give opinions without requiring that the persons be qualified as expert witnesses. *See Moore*, 323 Ark. at 548-50, 915 S.W.2d at 295 (holding that a police investigator's lay opinion that the sole of the defendant's athletic shoe matched a shoe print found on the center of the victim's bedroom floor was permissible where the investigator had some experience in that area and was clearly testifying that the patterns matched, which was not inconsistent with a crime lab report); *Russell v. State*, 306 Ark. 436, 440-41, 815 S.W.2d 929, 931-32 (1991) (holding that emergency medical technician's lay opinion that a victim's wounds were caused by a square-headed or Phillips head screwdriver was permissible where technician had previously observed wounds made by screwdrivers and observed the victim's wounds, as the "opinion

was one which a normal person who had previously seen punc-ture wounds made by screwdrivers would form"). Consequently, we conclude that the court did not abuse its discretion in permit-ting Dr. Doland to provide opinion testimony regarding the burns because she had knowledge of the treatment and diagnosis of burns from her medical training.

Affirmed.

VAUGHT and ROAF, JJ., agree.