2014 Ark. App. 255

**Paul CRISWELL, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and E.C., Minor Child, Appellees.**

**No. CV–13–1068.**

Court of Appeals of Arkansas.

April 30, 2014.

Didi H. Sailings, Arkansas Public Defender Commission, for appellant.

No response.

ROBERT J. GLADWIN, Chief Judge.

In this no-merit appeal, the Pulaski County Circuit Court terminated appellant Paul Criswell's parental rights to his daughter, E.C., on September 5, 2013. Appellant filed a notice of appeal on September 20, 2013. Counsel for appellant filed a motion to withdraw as counsel on appeal and a no-merit brief in accordance with *Linker–Flores v. Arkansas Department of Human Services (I)*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup.Ct. R. 6–9(i): (2013), listing several adverse rulings and explaining why there are no non-frivolous arguments to support an appeal.[1] We affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

1. Appellant filed a response to his counsel's motion to withdraw on February 10, 2013. He claimed that his counsel did not contact him before filing the record with this court. He claims that there are several inaccuracies in the "reports and information" relied on by the lower court to terminate parental rights. He contends that his counsel could not have made a conscientious review without all the correct facts. He alleges that if his counsel had sent him a copy of the record as filed for him to review and discuss, meritorious issues could have been presented. Alternatively, he states that he is incarcerated until at least May 2, 2014, is indigent, and wants a new lawyer to be appointed. This motion was denied by this court by order dated March 12, 2014.

Submitted with this appeal is appellant's motion for reconsideration, entitled "Notice of Interlocutory Appeal," where he seems to seek review of the denial of his motions. We hereby deny appellant's motion for reconsideration.

■ In *Linker–Flores,* the supreme court described the procedure for withdrawing as counsel from a termination-of-parental-rights appeal:

[A]ppointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. The indigent party must be provided with a copy of the brief and notified of his right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal.

*Linker–Flores,* 359 Ark. at 141, 194 S.W.3d at 747–48. Subsequently the supreme court elaborated on the reviewing court's role in reviewing a petition to withdraw in a termination-of-parental-rights appeal, holding that, when the trial court has taken the prior record into consideration in its decision, a "conscientious review of the record" requires the appellate court to review all pleadings and testimony in the case on the question of the ⌊₃sufficiency of the evidence supporting the decision to terminate, and that only adverse rulings arising at the termination hearing need be addressed in the no-merit appeal from the prior orders in the case. *Lewis v. Ark. Dep't of Human Servs.,* 364 Ark. 243, 217 S.W.3d 788 (2005).

■ Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.,* 2010 Ark.App. 543. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 526, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.,* 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo–Cox v. Ark. Dep't of Human Servs.,* 360 Ark. 340, 201 S.W.3d 391 (2005). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.,* 98 Ark.App. 328, 255 S.W.3d 505 (2007).

■ In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration the (1) likelihood that the juvenile will be adopted if the termination petition is granted; and (2) ⌊₄the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp.2009). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights.

*Gossett v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 240, 374 S.W.3d 205.

An order for emergency custody of E.C. (d.o.b. 8/29/08) was filed on March 16, 2012, based on a petition and affidavit alleging that the child's parents were unable to care for her because appellant, who had been keeping the child, was incarcerated in the Saline County jail, and the mother continued to have a substance-abuse problem. The mother had admitted in December 2011 that she had recently used methamphetamine, and E.C., who had been given a hair-follicle test, was positive for methamphetamine in November 2011.[2]

On July 23, 2013, an adjudication order was entered finding E.C. to be dependent-neglected due to neglect and parental unfitness. The goal of the case remained reunification. Appellant was ordered to contact DHS upon his release from prison; complete services including substance-abuse treatment; refrain from illegal drug use; notify DHS when he is living in stable housing and request a home study; and submit to random drug screens and provide urine and hair as requested by DHS. A review hearing was set for June 26, 2012. The review order from that hearing was filed on July 27, 2012, and custody of E.C. was continued with DHS. Appellant was still in prison, and the court continued its orders for him.

The permanency-planning order was filed on December 12, 2012, and it contains a finding that the case plan was not moving toward an appropriate permanency plan for E.C. Further, the order reflects that the parents were not in compliance or making significant measurable progress toward achieving reunification. In regard to appellant, the circuit court found as follows:

> In light of his release, his prior court-appointed counsel is relieved. He has been visiting with E.C., had negative drug screens, and wants to be considered for placement. The Court considers that placement a long shot, but will still order additional services consistent with Dr. Deyoub's recommendations including individual counseling, parenting classes and anger management. Mr. Criswell still has pending unresolved charges in federal court for which he awaits sentencing. If Mr. Criswell obtains a stable home, he is ordered to notify the Department so a home study can be completed which shall include a central registry and criminal background check on all adult occupants.

The circuit court authorized DHS to pursue termination of the parents' parental rights, but ordered DHS to offer reunification services "as termination is not a foregone conclusion. The parents must demonstrate that they are in compliance with services and are fit and appropriate parents. In light of this authorization, the Court will appoint new counsel to represent Mr. Criswell at the termination hearing."

At the termination hearing held July 23, 2013, the prior orders and appellant's psychological evaluation were admitted into evidence as exhibits. The circuit court also heard testimony from Shanesha Arbor, appellant, and Kasheena Walls. Ms. Arbor is a family service worker employed by DHS and assigned to this case. She testified that E.C. had been in DHS custody since March 16, 2012, which is more than twelve months. She said that appellant was incarcerated at that time and was released in August 2012, and he

---

2. The parental rights of the mother, Victoria Criswell, were terminated by separate order, and she is not a subject of this appeal.

completed a psychological evaluation, participated in counseling, and completed parenting classes on March 21, 2013. Appellant visited with E.C. every week once he was released from prison, and he was living with his son during that time. He obtained employment with Precision Tune. However, Ms. Arbor opined that neither parent had made substantial, measurable progress toward reunification. She said that, although appellant had completed services, he had to go back to prison to serve a thirty-six-month term. She stated that it was not in E.C.'s best interest to wait for her father to complete that term for permanency. She testified that she had concerns about appellant's anger issues and reports from E.C.'s sibling that appellant had abused him. She also noted other reports from E.C.'s mother of domestic violence by appellant. She stated that DHS recommended that appellant's parental rights be terminated.

On cross-examination, Ms. Arbor explained that Kim Gibson, appellant's cousin who lives in Memphis, had expressed an interest in custody of E.C. A home study was completed and approved, although Ms. Arbor had not received the documentation for that. She claimed that she was concerned about placing E.C. with Ms. Gibson because Ms. Gibson did not know E.C., having met her only one time, and had been contacted by appellant from prison. She believed that Gibson's intent, stated at a prior hearing, to take the child to visit appellant in prison, was potentially harmful. She also stated her concerns, which were based on statements made to her by the child and her mother, regarding appellant's anger issues.

Appellant testified via telephone conference from federal prison that he believed he would be released from prison on April 30, 2014, under the Second Chance Act, which would put him in a residential drug-treatment program. That release date was contingent upon good behavior. If he did not get released early, his release date would be December 2015. He testified that if he were to obtain release in April 2014, he would go to an apartment in Little Rock and would be required by the terms of his parole to get a job and abstain from drugs and alcohol. He said that he would have employment with Precision Tune; that he would be living in the apartment with his wife and a third person whom he did not know yet; that he had been arrested in 2006 or 2007 for aggravated assault; and that he had been previously arrested on a drug offense in 2002.

Kasheena Walls is an adoption specialist for DHS, and she testified that E.C. was adoptable. She said that she had identified potential adoptive homes for E.C., and that she was not aware of anything that would prohibit adoption.

The circuit court found that DHS had proved that the child had been outside the parents' care for more than twelve months and that the parents had failed to remedy the conditions that caused the removal. The court noted that appellant had been incarcerated at the time of removal and was still incarcerated at the time of the hearing. The court found that subsequent factors had arisen in that appellant was incarcerated during the pendency of the matter and that, even if he were to be released in April 2014, he would not be ready to receive custody right away. The court declined to base termination on appellant's failure to support the child or on abandonment, but did find that he had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life. Also, the court found that aggravated circumstances had been proved by clear and convincing evidence. The court noted again that appellant was not due for release until April 2014 under the best-case scenario. The court found that E.C. was adoptable

and that it was in the child's best interest that parental rights be terminated. The court stated that adoption did not preclude consideration of relatives for placement of the child. The order terminating parental rights was filed on September 5, 2013.

■ Counsel contends that there are no issues of arguable merit for appeal. At the time of the hearing on DHS's petition to terminate parental rights, E.C. had been in DHS custody for almost sixteen months. Appellant was incarcerated when E.C. was removed, he was incarcerated during much of the pendency of the case, and he was incarcerated at the time of the termination hearing. Thus, appellant had spent the majority of E.C.'s life in prison, and had appellant maintained his parental rights, E.C. would continue in foster care for significantly longer. Counsel cites *Hill v. Arkansas Department of Human Services,* 2012 Ark. App. 108, 389 S.W.3d 72; *Barber v. Arkansas Department of Human Services,* 2010 Ark. App. 381, 2010 WL 1790770; and *Fields v. Arkansas Department of Human Services,* 104 Ark. App. 37, 289 S.W.3d 134 (2008), each involving a parent's prison sentence that constituted a substantial period of a child's life. Here, E.C. is about five years old. Appellant has been incarcerated since February 2013 and is set for release in December 2015, when E.C. will be seven years old. Counsel contends that it would be wholly frivolous to argue that DHS failed to prove aggravating circumstances based on appellant's incarceration. Further, the circuit court's finding of adoptability was supported by testimony from the DHS adoption specialist. *See Reed v. Ark. Dep't of Human Servs.,* 2012 Ark. App. 369, 417 S.W.3d 736. Counsel addressed other grounds; however, proof of only one statutory ground is sufficient to terminate parental rights. *Gossett, supra.*

■ Counsel addressed appellant's objection to Ms. Arbor's testimony regarding appellant's alleged physical abuse of E.C.'s mother. The circuit court overruled the objection and advised appellant that he was represented by counsel and not allowed to address the court. No grounds were stated for the objection, and failure to argue a specific objection precludes its consideration on appeal. *Hewitt v. State,* 317 Ark. 362, 877 S.W.2d 926 (1994).

During Ms. Arbor's testimony, the attorney ad litem objected that appellant's attorney was testifying. The circuit court sustained the objection, which was proper pursuant to Arkansas Rule of Evidence 611(a) (2013).

Finally, the circuit court denied placement with relatives at the termination hearing; however, the circuit court stated that termination of parental rights does not preclude relatives from being considered. The court noted that relatives may not be approved because he had seen cases where children had been placed with relatives who then returned the children to the parents; however, the court concluded its remarks by stating that it would not prejudge what the best adoptive placement for the child would be and that the agency was not precluded from considering an appropriate relative.

Based on our examination of the record and the briefs, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases, and we hold that an appeal would be wholly without merit. Consequently, we grant counsel's motion to withdraw and affirm the order terminating appellant's parental rights.

Affirmed; motion to withdraw granted.

GLOVER and HIXSON, JJ., agree.