# ARKANSAS COURT OF APPEALS

DIVISIONS I & IV
**No.** CV-14-212

| | |
|---|---|
| | **Opinion Delivered** October 1, 2014 |
| SHARON CHAPMAN and SHANNON RIDDLE, SR. <br> APPELLANTS | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. JV-2013-96] |
| V. | HONORABLE MICHAEL MEDLOCK, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | AFFIRMED; MOTION TO WITHDRAW GRANTED |
| APPELLEES | |

**RHONDA K. WOOD, Judge**

This is a no-merit appeal from a circuit court's order terminating the parental rights of Sharon Chapman and Shannon Riddle, Sr., to their son S.R., age nine. Counsel for appellants filed a motion to withdraw as counsel and a no-merit brief pursuant to Arkansas Supreme Court Rule 6-9(i). Neither parent filed pro se points for reversal. The attorney ad litem filed a letter stating he did not find merit to an appeal and declined his option to file a brief. After a complete review, we affirm the termination and grant the motion to withdraw.

On April 19, 2013, the Arkansas Department of Human Services (DHS) received a report of suspected educational neglect of S.R. due to his being absent from school since March 11, 2013. DHS found the allegation true and opened a protective-service case. On

May 29, 2013, residents of an apartment complex contacted law enforcement after they observed S.R. "dumpster diving" for food. When law enforcement arrived, they found S.R. with multiple faded bruises on his legs and a bruised eye. S.R. told the police that his dad had "bashed his head into a car" and had whipped him with a belt. The police reported that S.R.'s ribs were visible and he was very thin. Upon further questioning, S.R. reported that he had sometimes gone two months without food[1] and that his dad would not let him go to school because of "my bruises and welts." DHS fed S.R. chicken nuggets, and when questioned as to why he was eating slowly, he stated "I'm going to save them for later."

Upon a physical exam, the doctor reported that S.R. was underweight at 58 lbs., had bruises on his eyes and knees, had a lesion on his wrist, expressed suicidal ideations, and had a dental contusion. The police arrested the father, Shannon Riddle, and charged him with endangering the welfare of a minor. The mother's whereabouts were unknown. DHS took an emergency hold on S.R.

The court adjudicated S.R. dependent-neglected. This was the third dependency-neglect case involving S.R. While the court's order stated the goal was reunification, the court approved the DHS case plan of termination and adoption and also set a no-reunification hearing. Seven months later, the court terminated appellants' parental rights.

In termination–of–parental–rights cases, our standard of review is de novo. We explained in *Pine v. Arkansas Department of Human Services* as follows:

---

[1]When asked, S.R. stated there were 60 days in two months and 24 hours in a day.

Grounds for termination of parental rights must be proven by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. . . . Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction on the health and well-being of the child.

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration that (1) likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Additionally, the trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.

2010 Ark. App. 781, at 9–10, 379 S.W.3d 703, 708–09 (citations omitted).

Here, the court's best-interest finding was not clearly erroneous. The evidence showed that S.R. was adoptable and that returning him to his parents' custody could cause potential harm. First, the caseworker testified that S.R. was adoptable, that there was at least one specific family interested in adopting him, and that his displayed aggression would not hinder adoption. We have held before that evidence like this is sufficient to support the adoptability prong of the court's best-interest analysis. *Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004). Second, DHS presented evidence that both parents failed to have stable housing during the seven months the case was open, that this was the third time S.R. had been in foster care, and that he had spent more than three out of his nine years in foster care. Coupled with the physical abuse, educational neglect, and the continued financial and residential instability of the parents, this evidence is sufficient for the court to find that potential harm existed if S.R. were returned a third time to his parents' custody. Altogether, there is clear and convincing evidence to support the circuit court's finding that termination was in S.R.'s best interest.

Next, the court found that DHS proved two statutory grounds for termination of parental rights. The first ground was that the juvenile was adjudicated dependent-neglected and had continued to be placed out of the parents' home for more than 12 months and, despite a meaningful effort on the part of DHS to rehabilitate the parents and correct the conditions which caused removal, the parents have not remedied the conditions. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2013). We agree with counsel that the court erred in finding this ground applicable to the present case. Here, S.R. had been out of the home for only seven months at the time of the termination hearing. The court calculated the time out of the home as more than twelve months by adding together the total time S.R. spent in foster care in prior cases. This is considered "stacking" time. We have previously held that it is impermissible to add time in multiple cases to obtain the twelve-month out-of-home placement as required by this statutory ground. *Williams v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 622. This error does not result in reversal in the present case, however, because the court is required to find only one statutory ground for termination. *See Dawson v. Ark. Dep't of Human Servs.*, 2011 Ark. 106, 391 S.W.3d 352.

The court's finding on the second statutory ground was not made in error. It ruled that DHS proved an additional ground by clear and convincing evidence: that the parents had subjected S.R. to aggravating circumstances in that there is little likelihood that services to the family would result in successful reunification. The court made specific findings that DHS had worked with this family on and off for seven years and that the juvenile had spent more than three years in foster care. The court found that although it

had returned S.R. to the parents twice, reunification was not successful in either case because the end result was a subsequent removal.

Other evidence also showed that reunification was unlikely. At the time S.R. entered foster care in May, 2013, he was living with his father because his mother had moved to Missouri. The mother had moved often since the case began, four times in the month before the hearing alone, including living in (1) Missouri, (2) the homes of several friends, (3) a motel room, (4) the Salvation Army shelter, and (5) an apartment. She receives a check of $630 per month, which supports her, her sixteen year old, and the father.[2] Three months before the hearing, she was arrested for hot-check violations, which she contends were because she did not have enough income to pay her bills. The father likewise testified he had moved several times, including stays in a motel and a shelter. He admits he is completely dependent on the mother's SSI check and that he has not filed a tax return since at least 2011.

The court specifically found that the parents could not support S.R. with their current finances and had not provided a "meaningful plan" to become capable of caring for S.R.'s needs. The court ultimately found that given all the services provided to the parents over a seven-year period and the parents' inability to permanently correct the conditions causing the removal, there was little likelihood that additional services would result in a successful reunification. We cannot say that the voluminous evidence of continued parental instability renders the court's finding on this ground clearly erroneous.

---

[2]The parents moved in together two weeks before the hearing, and the father has no income source.

The dissent contends that the court's decision allowing DHS to present evidence as to S.R.'s total time in foster care was a potentially meritorious issue. However, we agree with counsel that this is not a meritorious argument. First, the father's specific objection to the testimony of the past cases was that this evidence could not be used to prove the statutory ground that S.R. had been out of the home for more than twelve months. He argued that it was impermissible to "stack" time,[3] which we agreed with above. But he did not raise the objection in regard to the past cases providing evidence of the aggravated-circumstances ground, even after the attorney ad litem pointed out that it would be relevant on this ground and would put him on notice. We have long held that a party has a burden to make a specific objection and failure to do so precludes its consideration on appeal. *Criswell v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 255, 435 S.W.3d 26. What is more, even if he had made a sufficient, specific objection, a court can still consider any evidence relevant to the case at hand. A court's rulings on the admissibility of evidence will not be reversed absent a manifest abuse of discretion. *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002). On a merit-based appeal, we would not have ruled that the court abused its discretion by admitting evidence that this young boy had been in and out of foster care for over seven years as relevant to considering his best interest, the likelihood of a successful reunification, and the potential for harm upon reunification.

In the seminal case of *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 141, 194 S.W.3d 739, 747-48 (2004), the Arkansas Supreme Court set the

---

[3]The mother did not object.

guidelines for both counsel and the appellate court to follow in no-merit termination–of

parental–rights appeals as follows:

> [W]e hold that appointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. The indigent parent must be provided with a copy of the brief and notified of her right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal. If, however, we find any of the legal points arguable on their merits, we will appoint new counsel to argue the appeal.

(citations omitted).

Counsel has complied with the above guidelines. Counsel filed a motion to

withdraw and a contemporaneous brief in which she has addressed all potentially

meritorious arguments and explained why they ultimately would not lead to a successful

appeal. Likewise, our court has conducted a complete review under the *Linker-Flores*

standard and has determined that the appeal is frivolous. We therefore grant counsel's

motion to withdraw and affirm.

Affirmed; motion to withdraw granted.

WYNNE, GRUBER, HIXSON, and BROWN, JJ., agree.

HARRISON, J., dissents.

7

**BRANDON J. HARRISON, Judge, dissenting.** The majority has decided an issue of first impression in the termination-of-parental-rights context—with only a no-merit brief in hand and after concluding that the issue was not preserved for its review in the first place. Broadly stated, the novel issue decided today is that, for the purpose of establishing aggravated circumstances under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(B)(*i*), prior DHS cases opened on a family, both of which resulted in reunification, can be used adversely against the parents in a subsequent and separate termination–of–parental–rights case. This question involves not only whether enough proof existed to find that aggravated circumstances existed, but equally important for future cases, what sort of proof a court may consider in the first instance under section 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(B)(*i*).

I respectfully dissent from the majority opinion because I would deny the motion to withdraw (at least in part) and call for a merit brief before deciding that sweeping issue. Recall that the circuit court found that two statutory grounds supported the termination: (1) S.R. had been out of the home for over twelve months, and the conditions causing removal had not been remedied by the parents, despite meaningful effort by DHS to rehabilitate them; and (2) aggravated circumstances existed because the parents could not permanently correct the conditions that caused three removals over a span of seven years—and there would be little likelihood that additional services to the family would result in successful reunification. I address the second ground.

The majority holds that the issue of "past cases providing evidence of the aggravated circumstances ground" was not preserved for our review because neither

parent raised a timely, specific objection to the circuit court considering such evidence for purposes of applying the aggravated-circumstances statute. Whether the issue was properly preserved for our review was, it seems to me, for parents' counsel to make and explain in the no-merit brief. In fact, contrary to the majority's conclusion, counsel thought the case-history/aggravated-circumstances point was preserved for our review because she argued that aggravated circumstances existed and used the past history to make one no-merit argument point.

Here is some more of the procedural story. The parents moved to dismiss DHS's petition for lack of clear-and-convincing evidence in the pleadings, before the court received testimony during the termination hearing, and when all the evidence had been presented. The parents' motions to dismiss argued that DHS "could have opened up the same case" but it did not; and now "[w]e have a different case number so it's a brand new set of circumstances" and in the new case DHS did not offer any services to the parents. Counsel's no-merit brief abstracted and discussed one of the motions to dismiss.

During the termination hearing the court ruled several times that neither DHS nor the parents could talk about the services that DHS offered the parents in the past. For example, the court stated: "I'm going to let you talk about the time out of custody or in the Department's custody, but not anything else to do with those other cases. I don't think they're applicable . . . I don't think you can stack those facts . . . I'm not going to let you talk about what happened in the other cases except the time." The court also sustained the father's objection and prevented the DHS caseworker from testifying about the family's history and the services DHS had offered in the past. Yet in its termination

order, the court specifically relied on services that DHS had offered the parents in the prior cases as evidence of why reunification services in this case were unlikely to succeed, a finding that supported the aggravated-circumstances ground for termination. The circuit court was well attuned to DHS's attempt to use past, separate case histories to establish aggravated circumstances in this case. And it ruled on the issue, albeit inconsistently at different points in the case.

In her no-merit brief counsel cited some cases for the proposition that "it was proper for the court to rely on the services [DHS] offered in the previous cases to find that further services in the current case would not likely result in reunification." But the cited law was either not citable under Ark. Sup. Ct. R. 5-2(c) (2014) or wholly distinguishable from this case. The majority cited *Hopkins v. Arkansas Department of Human Services*, 79 Ark. App. 1, 83 S.W.3d 418 (2002) to support its aggravated-circumstances holding, but that case is not like this one, factually or procedurally. So a no-merit argument was made by counsel and accepted by this court although no applicable, citable authority has been provided to closely support the majority's holding that affects aggravated-circumstances law. This is my primary concern about this case.

In my view, a nonfrivolous argument exists that the circuit court erred as a matter of proof or law (or both) in using the past closed cases, which involved different fact patterns and resulted in reunification each time, to reach the aggravated-circumstances finding in this case. The argument is arguably best made for the mother because she was the nonoffending parent in this case, lacked legal custody of the child when he was removed from the father's care, and received no services for the seven months between

the time this case was opened and the court's termination decision was entered. This is not to say or suggest that the circuit court committed a reversible error. That is a merit point. I am simply stating that the no-merit process was not a good fit here.

This case's merits are weak as far as the parents are concerned. But that is not unusual in termination cases; families have regrettably reached the end, or near the end, of the legal line in these cases. In any event, we have previously ordered that a no-merit appeal be briefed as a merit appeal. *See Baker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 69 (*Baker I*).

The *Baker* reference leads to a related point that deserves mentioning now: just how should we be deciding when a no-merit appeal is proper? The majority's opinion invoked the standard "frivolous" as it decided to accept the no-merit brief and grant counsel's motion to withdraw. But it's not crystal clear what the no-merit standard is. Our supreme court's *Linker-Flores* decision uses the term "wholly frivolous[.]" Not long ago, this court tied the no-merit standard to Arkansas Rule of Professional Conduct 3.1. *Baker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 400 (*Baker II*). The majority's silence on this arguable discrepancy leaves the matter open.

Finally, to a charge that this court would put process above a child's well-being if it called for a merit brief, or that I have elevated a procedural molehill into a mountain, I invoke Justice Felix Frankfurter's admonition that "the fair, orderly, and deliberative method by which claims are litigated" is not just "folderol or noxious moss" but instead "goes to the very substance of law." *Cook v. Cook*, 342 U.S. 126, 133 (1951) (Frankfurter, J., dissenting).

*Leah Lanford* Arkansas Public Defender Commission, Dependency–Neglect Appellate Division, for appellant.

No response.