

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-33

| | |
|---|---|
| | **Opinion Delivered** November 2, 2016 |
| MIKE GEATCHES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17JV-14-58]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Mike Geatches appeals the Crawford County Circuit Court's order terminating his parental rights to two minor children, C.S. and G.G. Previously, Mike's appellate counsel filed a motion to withdraw and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004) (*Linker-Flores I*), while his wife Amy filed a merit brief challenging the circuit court's findings as to statutory grounds and best interest in terminating her parental rights to the same children. We affirmed the termination of Amy's parental rights but denied Mike's counsel's motion to withdraw and ordered rebriefing and supplementation of the record. *Geatches v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 344. This merit appeal followed. Mike's only argument on appeal is that he never had any parental rights to C.S. and was therefore not subject to an order purporting to terminate such rights. Because Mike failed to preserve this argument for appeal, we affirm.

A full recitation of the facts is presented in our previous opinion in *Geatches v. Arkansas Department of Human Services*, 2016 Ark. App. 344. There was conflicting evidence in the record about C.S.'s paternity. Throughout the case, the case caption consistently reflected that Mike was designated as the "father" of both "juveniles." He is referred to as both "father" and "parent" without any caveat or designation regarding to which child. Early in the case, prior to the dependency-neglect hearing, the Arkansas Department of Human Services (DHS) filed an amended petition for emergency custody alleging that a man named Leland Terry was the biological father of C.S. However, the following adjudication order did not include Leland Terry's name in the caption and did not make any reference to him in the order. In fact, none of the subsequent orders in this case mentioned Mr. Terry.

At the termination hearing, there was no direct testimony or evidence about C.S.'s paternity, but Mike stated that he had "been acting as the father of C.S." and that Amy described an instance when there had been an allegation of abuse reported to DHS by "the wife of C.S.'s biological father" (indicating that C.S.'s biological father was someone other than Mike). The trial court, in its ruling from the bench, stated that it terminated Mike's rights based on the "best interest of the juveniles, actually juvenile." DHS also specifically requested that it be granted permission to file a termination petition against Leland Terry at a later date. However, the written termination order subsequently issued by the court states that it terminated Mike's parental rights to G.G. and C.S., and the caption identified Mike as the father of both children.

In *Knuckles v. Arkansas Department of Human Services*, we explained that we review termination-of-parental-rights cases de novo. 2015 Ark. App. 463, at 2–3, 469 S.W.3d 377,

378–79 (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)). However, we reverse a trial court's decision to terminate parental rights only when it is clearly erroneous. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851; *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999); *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002).

Mike raises only one point on appeal, that the circuit court erred in terminating his parental rights to C.S., who is not his biological child and to whom he never had any parental rights. Mike acknowledges that he never raised this issue below, but he argues that he should not be barred from raising it on appeal because our caselaw is clear that a posttrial motion is unnecessary to preserve an issue for appeal in a dependency-neglect case. In *Kelso v. Arkansas Department of Human Services*, 2013 Ark. App. 509, at 3, we explained,

> The first possible time Kelso could have known that the trial court erroneously checked these provisions in the termination order was when in fact he received the termination order. Furthermore, we hold that a party need not file post-trial motions in termination proceedings. In *Ashcroft v. Arkansas Department of Human Services,* 2009 Ark. 461, at 2–3, our supreme court specifically held that post-trial motions will not extend the time for filing the notice of appeal in dependency-neglect cases:
>
>> Rule 6–9 sets twenty-one days as the time within which the notice of appeal must be filed in cases involving dependency neglect. Ark. Sup.Ct. R. 6-9(b)(1) (2009). In addition, Rule 6-9(b)(4) states that "[t]he time in which to file a notice of appeal or a notice of cross-appeal and the corresponding designation of record will not be extended." The express purpose of Rule 6-9(b) is to expedite the appellate process in dependency-neglect cases. *Ratliff v. Ark. Dep't of Health & Human Servs.*, 371 Ark. 534, 268 S.W.3d 322 (2007) (per curiam). Although

Rule 4(b)(1) of the Arkansas Rules of Appellate Procedure–Civil allows the
deadline for a notice of appeal to be extended where certain post-trial motions
have been filed, we have held that we will not extend that rule to dependency-
neglect cases because doing so would vitiate the purpose of Rule 6-9(b). *Ratliff,*
371 Ark. at 535, 268 S.W.3d at 323.

This ruling effectively prevents counsel in dependency-neglect actions from filing
and obtaining a ruling on post-trial motions prior to the deadline for filing a notice of
appeal. As a result, we find that the issues raised by counsel have been sufficiently
preserved for our review.

*Kelso,* 2013 Ark. App. 509, at 3 (quoting *Ashcroft v. Ark. Dep't of Human Servs.*, 2009 Ark. 461,

at 2-3).

Therefore, we must determine whether, as in *Kelso*, Mike could not have been aware of

the circuit court's alleged error until he received the termination order. We hold that the case

at bar is distinguishable from *Kelso* because Mike was on notice throughout the case that he

was being treated as the "father" and "parent" of both juveniles. While the circuit court was

inexcusably unclear in designating Mike's status as to each child, it consistently listed him as

the father of both children in both the case caption and throughout its orders. Therefore,

unlike in *Kelso*, Mike had the opportunity to raise an objection and obtain a ruling on this issue

from the circuit court, and he failed to do so. The failure to raise issues or to obtain rulings at

the circuit court level is fatal to this court's consideration of the issue on appeal. *Johnson v. Ark.*

*Dep't of Human Servs.*, 2012 Ark. App. 537, at 7.

Affirmed.

KINARD, J., agrees.

GRUBER, J., concurs.

**RITA W. GRUBER, Judge, concurring.** I agree with the majority that we cannot reach

the merits of this case because the argument before us—that termination of Mike Geatches's

parental rights was in error because he was not the child's biological parent and never had parental rights to her—is not preserved for our review.

I write to express my concern that the issue of appellant's paternity was not addressed by the circuit court early in the proceedings below.  The circuit court should have established whether appellant was the biological father or whether he was a putative father with significant contacts with the child, such that parental rights had attached.  *See* Ark. Code Ann. § 9-27-311(c)(2)(B) (Supp. 2015) (providing that a putative parent to whom no rights have attached will not be made a party to a dependency-neglect proceeding in the first place); Ark. Code Ann. § 9-27-325(o)(1)(A) (stating that the Arkansas Department of Human Services "shall make diligent efforts to identify putative parents in a dependency-neglect proceeding").

Additionally, I would reject appellant's alternative argument that he suffered prejudice from the order terminating his parental rights to C.S. because an involuntary termination may in the future serve as automatic grounds for terminating his parental rights to another child. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(4) (setting forth the statutory ground that a parent "had his or her parental rights involuntarily terminated as to a sibling of the child").  I agree with appellees' response, that appellant can show no prejudice because he does not appeal the involuntarily termination of his parental rights with respect to G.C., his biological daughter.

*Dusti Standridge*, for appellant Amy Geatches.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant Mike Geatches.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.