Cite as 2020 Ark. App. 87

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-19-792

| | |
|---|---|
| TIMBERLY MUSICK<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** February 5, 2020<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BJV-18-23]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Timberly Musick appeals from the termination of her parental rights to her three sons J.M., age eight, M.M., age six, and D.R., age three.[1]  On appeal, Timberly argues that the termination order should be reversed because there was insufficient evidence of statutory grounds and insufficient evidence that the termination was in the children's best interest.  We affirm.

We review termination-of-parental-rights cases de novo.  *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851.  At least one statutory ground must exist, in addition to finding that is in the child's best interest to terminate parental rights;

---

[1]Stephen Musick, father of J.M. and M.M., never appeared or participated in the case, and his parental rights were also terminated.  Dustyn Ramey, father of D.R., did appear in the case, and a hearing on a petition to terminate his parental rights was scheduled to be held two weeks after the order terminating Timberly's parental rights was entered.  Neither father is a party to this appeal.

these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2019); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case began on March 5, 2018, when appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody of the children. The children were living in a house with Timberly and Dustyn, and DHS received a report of environmental neglect. Upon investigation, it was discovered that the home was unclean and full of feces. A DHS caseworker described the odor in the home as "unbearable." According to the caseworker, Timberly was "tweaking and bouncing all over the place" and appeared to be on drugs. When asked about the smell of the house, Timberly said that she did not smell anything. Timberly and Dustyn were given drug screens, and they were both positive for methamphetamine, amphetamine, and THC.

On March 7, 2018, the trial court entered an ex parte order of emergency custody. On March 9, 2018, the trial court entered a probable-cause order. In the probable-cause order, Timberly was ordered to complete parenting classes; obtain and maintain clean, safe,

and stable housing; obtain and maintain stable employment; submit to a drug-and-alcohol assessment and follow the recommendations; and to remain drug free and submit to random drug screens.

The trial court entered an adjudication order on May 23, 2018, finding the children to be dependent-neglected. The goal of the case was reunification.

The trial court entered a review order on August 29, 2018. In the review order, the trial court noted that Timberly had tested positive for methamphetamine in May 2018 and that she had not obtained adequate housing. The trial court also noted, however, that Timberly had significantly complied with the case plan by completing parenting classes, completing her drug-and-alcohol assessment, and visiting her children. The goal of the case remained reunification. In a subsequent review order entered on October 24, 2018, the trial court noted that Timberly had recently completed a substance-abuse treatment program, and again stated that the goal remained reunification.

On February 28, 2019, the trial court entered a permanency-planning order, wherein the case goal was changed from reunification to termination of parental rights and adoption. In the permanency-planning order, the trial court found that Timberly (as well as Dustyn) had not completed the case plan and continued to have unresolved substance-abuse and criminal issues.

On March 8, 2019, DHS filed a petition to terminate the parental rights of Timberly and both of the fathers. The termination hearing was held on June 21, 2019.[2]

---

[2]Because Dustyn was not represented by counsel at the June 21, 2019, termination hearing, the termination proceedings against him were continued to a later date.

On July 19, 2019, the trial court entered an order terminating Timberly's parental rights to her three children. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted as well as the potential harm of returning them to the custody of their mother as required by Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The trial court also found clear and convincing evidence of these three statutory grounds under subsection (b)(3)(B):

(i)*(a)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

. . . .

(vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

. . . .

(ix)*(a)* The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
   *(3)(A)* Have subjected any juvenile to aggravated circumstances.
   *(B)* "Aggravated circumstances" means:
      *(i)* . . . [A] determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

At the termination hearing, Timberly testified that she currently lives in the same house she lived in when the children were removed from her custody. The house belongs

4

to Dustyn's mother, and Timberly lives there with Dustyn's mother and Dustyn's brother. Timberly stated that Dustyn had been living there too but that his mother kicked him out of the house a week ago after he failed a drug screen. Timberly stated that at one point during the case she and Dustyn had briefly moved to another residence, but they later returned to Dustyn's mother's house. At one point in her testimony she stated that she is still in a relationship with Dustyn, and at another point she stated that they had recently broken up. Timberly acknowledged that she still loves Dustyn.

Timberly stated that she has no driver's license or vehicle but that she sometimes relies on Dustyn's mother for transportation.[3] Timberly further stated that she is employed working for her half sister. Timberly said that "I clean and cook and walk dogs."

Timberly acknowledged being arrested twice during the case. On one occasion she was arrested for failure to pay child support. On another occasion she was arrested for stealing an electronic tablet. Timberly pleaded guilty to theft and was given probation and community service.

Timberly recalled another incident where she unsuccessfully attempted to cash an altered check. About two months before the termination hearing, Timberly went to the preacher of a local church and claimed she needed money to pay her electric bill. The preacher agreed to help her and gave Timberly a $100 check made out to the electric company. After Timberly received the check, her name was written in over the name of

---

[3]Timberly also stated that Dustyn's mother's car had been recently impounded when Timberly was riding in the car and it was stopped by the police. The police impounded the car after discovering that neither Timberly nor the driver had a driver's license.

the electric company as the payee, and Timberly tried to cash the check at a bank. Timberly stated that this was a "misunderstanding" and that she was not charged with a crime.

Richard Bryce, the caseworker assigned to the case, testified that although Dustyn's mother's house is now in adequate condition, he did not think it constituted stable housing for Timberly because Timberly had no legal right to be there and could be asked to leave at any time. Mr. Bryce testified that Timberly had tested positive for drugs twice during the case, most recently in May 2018. Mr. Bryce thought that Timberly and Dustyn were still in a relationship, and he stated that on a home visit a couple of weeks before the termination hearing, Dustyn bragged to him about how much money he could make selling cocaine out of the home. According to Mr. Bryce, Timberly was present during this conversation and told Dustyn not to speak with the caseworker about his drug sales.

Mr. Bryce testified that with respect to some of the services offered, such as parenting classes and a drug-and-alcohol assessment, Timberly did "check the boxes." However, he was concerned about potential harm to the children if they were returned to Timberly's custody. Mr. Bryce was concerned with the housing situation, drug issues, and Timberly's illegal activities. He indicated that there were no additional DHS services that had not already been provided that could turn the case around. Mr. Bryce further stated that the children are adoptable and that a potential adoptive home had been identified.

Hillary Trickey, the children's foster parent, testified that the children are thriving and doing well and that she is interested in adopting them if parental rights are terminated. Hillary acknowledged that the children love Timberly, but she stated that the children get very hurt and upset when Timberly misses her scheduled weekly visits with them, which

6

has happened about twenty to twenty-five times. Hillary testified that, about a month before the termination hearing, Timberly called her, stated that Dustyn's mother had kicked her out of the house, and stated that she was looking for a homeless shelter.[4]

Dustyn testified that he tested positive for drugs throughout the case and that he is a drug addict. He also stated that he has been arrested several times. However, Dustyn denied selling drugs from his mother's house and stated that his mother would not allow drugs there. Dustyn stated that Timberly no longer uses drugs and that the primary problem in their relationship is that he still uses drugs. Dustyn stated that he and Timberly broke up about two weeks before the termination hearing, but he also indicated that in the past there were times they had broken up and gotten back together. Dustyn indicated that he would like to reunite with Timberly and hopes that she feels the same way.

On appeal from the termination of her parental rights, Timberly first challenges the sufficiency of the evidence to support any of the three statutory grounds found by the trial court. The three statutory grounds found by the trial court are commonly referred to as the "twelve-month failure to remedy" ground, the "subsequent factors" ground, and the "aggravated circumstances" ground.

Timberly argues that the "twelve-month failure to remedy" ground was not satisfied because the reasons for the children's removal from her custody had been remedied. The reasons for the children's removal were Timberly's illegal drug use and unsanitary living conditions, and she asserts that these conditions have been remedied given that her last

_____

[4]In her testimony, Timberly acknowledged being kicked out of Dustyn's mother's house but stated that she returned to the house shortly thereafter.

positive drug screen was thirteen months before the termination hearing and that the house where she lives is now in an appropriate condition. Timberly argues that there was a lack of proof as to the "subsequent factors" ground, contending that although she had been twice arrested since the case began, these arrests did not pose a health and safety risk to the children. Although Timberly acknowledged missing some visitation with her children, she disputes the number of missed visits testified to by the foster mother and asserts that many of these missed visits were due to transportation issues. As to the "aggravated circumstances" ground, Timberly asserts that she had resolved her drug issues and criminal charges and that there was a lack of evidence that additional services would not likely result in reunification.

Although the trial court found three grounds for termination, only one ground is necessary to support the termination. *Brown v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 303, 521 S.W.3d 183. We conclude that the trial court did not clearly err in finding that DHS proved the "aggravated circumstances" ground.

The issue as to whether DHS proved aggravated circumstances is whether the proof showed that there was little likelihood that services to Timberly would result in successful reunification. The record shows that, at the time of the termination hearing, Timberly did not have her own housing and had briefly been kicked out of Dustyn's mother's house just a month before the termination hearing. Although Timberly claimed to be doing some work for her half sister, she never reported this to DHS or provided any documentary proof of employment or income. Timberly has no driver's license and no vehicle and has twice been arrested during the case. One arrest was for failure to pay child support, and the other was for a theft to which she pleaded guilty and was placed on probation. Although she was

not charged with forgery, Timberly admitted that just two months before the termination hearing she unsuccessfully tried to cash an altered check from a local pastor under the guise of paying an electric bill.[5]  The evidence demonstrated a persistent lack of stability for Timberly, which is relevant in determining whether the aggravated-circumstances ground has been proved.  *See Chapman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 525, 443 S.W.3d 564.  Moreover, there was proof that Timberly has a relationship with a man whom she knows to be a drug addict and who reportedly bragged in her presence about dealing drugs.  Finally, the proof showed that Timberly's interest in reunification was questionable given that she missed twenty to twenty-five visits with her children.  The caseworker indicated that there were no additional DHS services to offer Timberly that had not already been provided to accomplish reunification with her children.  On this record, we hold that the trial court's finding that DHS proved the "aggravated circumstances" ground by clear and convincing evidence was not clearly erroneous.

Timberly's remaining argument is that there was insufficient evidence that the termination of her parental rights was in the best interest of the children.  Timberly does not dispute that the children are likely to be adopted and could thus find permanency through adoption.  Instead, she argues that the trial court's best-interest finding is flawed due to a lack of evidence that the children would be subjected to potential harm if returned to her custody.

---

[5]Timberly acknowledged in her testimony that she paid none of the utilities at the house where she was living.

We hold that the trial court's potential-harm finding was not clearly erroneous; nor was the trial court's finding that termination of Timberly's parental rights was in the children's best interest. In considering potential harm caused by returning a child to a parent, the trial court is not required to find that actual harm would result. *Middleton v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 97, 572 S.W.3d 410. Potential harm must be viewed in broad terms, including the harm the child suffers from the lack of stability in a permanent home. *Id.*

We conclude that the same evidence that supports the aggravated-circumstances ground also supports the potential-harm prong of the trial court's best-interest finding. As stated previously, there was evidence that Timberly lacked reliable housing or transportation, that she visited her children only sporadically, that she had no steady means of income, and that she had engaged in criminal activity as an apparent result of her lack of finances. The record supports the trial court's finding that termination of Timberly's parental rights was in the children's best interest, and we affirm the termination order.

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.