Cite as 2019 Ark. App. 379

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-304

JACKIE THACKER

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILD

APPELLEES

Opinion Delivered: September 18, 2019

APPEAL FROM THE SEBASTIAN
COUNTY CIRCUIT COURT, FORT
SMITH DISTRICT
[NO. 66FJV-2017-392]

HONORABLE ANNIE POWELL
HENDRICKS, JUDGE

AFFIRMED

---

**RAYMOND R. ABRAMSON, Judge**

Jackie Thacker appeals the Sebastian County Circuit Court order terminating his

parental rights to his daughter, B.T. (D.O.B. 6/3/11). On appeal, he argues that the circuit

court erred by terminating his parental rights because there was insufficient evidence to

support a statutory ground for termination. We affirm.

On September 8, 2017, the Arkansas Department of Human Services (DHS) filed a

petition for emergency custody and dependency-neglect over B.T. The petition named

Thacker as the legal father and Rachel Heydorn as the mother.[1] In the affidavit attached to

---

[1]Heydorn is not a party to this appeal.

the petition, DHS alleged that Heydorn had been arrested[2] and that Heydorn had informed officers that B.T. was living with the child's father, Jeremy Taylor. However, a family-service worker discovered that Thacker, not Taylor, was listed as the father on B.T.'s birth certificate. When the family-service worker interviewed Taylor, Taylor explained that Heydorn had been married to Thacker at the time of B.T.'s birth, but that he, Taylor, is B.T.'s biological father. The affidavit further stated that a family-service worker verified during Heydorn's background check that she had been married to Thacker from January 5, 2010, through February 17, 2012. DHS placed a seventy-two-hour hold on B.T. because Taylor did not have legal custody of the child. The court entered an ex parte order for emergency custody on September 8, 2017, and on September 13, the court found probable cause for the emergency custody.

On November 6, the court adjudicated B.T. dependent-neglected based on Heydorn's parental unfitness and inadequate supervision. Thacker appeared at the hearing with counsel. The court found the allegations in the petition for emergency custody true and correct. Specifically, the court found Thacker to be the "non-custodial parent who is a legal parent" and that he did not contribute to the dependency-neglect of B.T. However, the court found that Thacker was not a fit parent because he had not attempted to visit B.T. and had admitted using marijuana. The court set the case goal as reunification, awarded Thacker visitation, and ordered him to comply with the case plan.

_____

[2]Specifically, Heydorn was arrested for possession of a controlled substance, possession of drug paraphernalia, and first-degree endangering the welfare of a minor.

On March 28 and April 25, 2018, the court held a review hearing. The court found that Thacker had completed parenting classes but had displayed concerning behavior during visitation. The court set concurrent goals of reunification and adoption, and it ordered Thacker to comply with the case plan.

On July 25, the court held a permanency-planning hearing. Thacker appeared at the hearing with his court-appointed counsel and his attorney ad litem. The court found that Thacker was living in a one-bedroom house and had reported that he was employed but had not offered proof of employment. The court noted that he had completed parenting classes and had visited B.T. but that he had acted inappropriately during visitation and had failed to cooperate when corrected. The court found that Thacker did not have the ability to improve or learn from services. The court ordered DHS to make a referral for genetic testing for Thacker, and it changed the goal of the case to termination of parental rights.

On August 28, DHS filed a petition to terminate Thacker's parental rights, and the court held a termination hearing on October 31. Thacker appeared in person and by his court-appointed counsel and his attorney ad litem. He testified that he is B.T.'s father and that he wanted full custody of the child. When asked whether he had requested a DNA test to establish his paternity, he responded that the law does not require a DNA test and that he did not want a test. He testified that he signed B.T.'s birth certificate and that he had written 500 letters requesting full custody of the child. Thacker further stated that he had been diagnosed with bipolar disorder when he was thirteen years old and that he had continuously taken his medication during the case.

Mindy Tuck-Duty, the family-service worker, testified that when Heydorn was arrested, B.T. was living with Taylor but that B.T. is not related to Taylor. When asked whether B.T. was born while Thacker and Heydorn were married, Tuck-Duty stated, "From my understanding, it was during, the child was born during their marriage."

During closing statements, Thacker's ad litem stated,

> I would also like to add, just for purposes of the record, that at the last hearing . . . I had specifically wanted a DNA test for my client, and I determined that that would be in his best interest, as his guardian ad litem, specifically because if he was not the father, then that would absolve him of having a possible involuntary termination on him for a child that may or may not be his. If the Court recalls, I just want to put on the record that my client, Mr. Thacker, specifically said he didn't want a DNA test, and so that was not due to Mr. Post or myself not recognizing that legal issue and those potential consequences of not having the DNA test before we went on the record today.

Thereafter, on January 2, 2019, the court entered an order terminating Thacker's parental rights. The court found that the failure-to-remedy,[3] aggravated-circumstances,[4] and subsequent-factors[5] grounds supported termination. The court further found it was in the best interest of B.T. to terminate Thacker's parental rights. This appeal followed.

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dade v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a

---

[3]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(b)* (Supp. 2017).

[4]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)*.

[5]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

4

definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122.

The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. As a result, there is a heavy burden placed on the party seeking to terminate the relationship. *Id.* The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Thacker does not challenge the circuit court's best-interest finding; he argues only that the court erred in finding that a statutory ground supported termination. The court found that the failure-to-remedy, aggravated-circumstances, and subsequent-factors grounds supported termination. Thacker points out that each of these grounds requires DHS to prove that he is a "parent" to B.T.,[6] and he argues that DHS failed to

---

[6]*See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(b)*, (ix)*(a)*, (vii)*(a)*.

establish he is a "parent." He acknowledges that if he was married to Heydorn at the time of B.T.'s birth, he would be the legal father and thus a "parent" pursuant to the juvenile code.[7] However, he claims that DHS failed to offer sufficient proof that he was married to Heydorn when B.T. was born.[8]

Thacker asserts the circumstances in this case are akin to those in *Tovias v. Arkansas Department of Human Services*, 2019 Ark. App. 228, 575 S.W.3d 621. In *Tovias*, this court reversed a termination order because there was insufficient evidence to support a finding that Tovias was a "parent." *Id.* In a permanency-planning order, the circuit court found Tovias to be the "legal father;" however, there was "absolutely no basis in the record to support" the finding, and the circuit court had frequently interchanged the terms "legal father" and "putative father." *Id.* at 9–10, 575 S.W.3d at 626. We stated that "Tovias's status as 'legal father' is murky at best." *Id.* at 10, 575 S.W.3d at 626.

We find this case unlike *Tovias*. In this case, the circuit court found Thacker to be the "non-custodial parent who is a legal parent" in the adjudication order. Specifically, the court found the allegations in DHS's petition for emergency custody true and correct, and the affidavit attached to the petition stated that Thacker had been married to Heydorn

---

[7]"Parent" is defined by Arkansas Code Annotated section 9-27-303(40) as a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth, who has signed an acknowledgment of paternity pursuant to section 9-10-120, or who has been found by a court of competent jurisdiction to be the biological father of the juvenile. *See Tovias v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 228, 575 S.W.3d 621.

[8]Thacker does not otherwise challenge the proof supporting these grounds.

from January 5, 2010, through February 17, 2012, and that B.T. was born in June 2011. Pursuant to Rule 6-9(a)(1)(A) of the Arkansas Rules of Appellate Procedure–Civil, the adjudication order was a final, appealable order, and Thacker did not appeal that order. *See Howell v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 154, 517 S.W.3d 431. Further, at the termination hearing, the family-service worker testified that B.T. was born during Thacker and Heydorn's marriage, and at the conclusion of the hearing, Thacker's attorney ad litem stated that she had recognized the "legal issue and those potential consequences" of a DNA test and that Thacker had declined the test. We have held that "an appellant may not complain of an action of the trial court which he induced, consented to, or acquiesced." *Brown v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 104, 542 S.W.3d 899 (holding that Brown had consented to and acquiesced in the circuit court's finding that established his parental status). Given these circumstances, we cannot say that the circuit court's decision was clearly erroneous.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.