Cite as 2021 Ark. App. 309

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-738

| | |
|---|---|
| NICHOLAS BURKS, SR.<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** September 1, 2021<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28JV-20-79]<br><br>HONORABLE BARBARA HALSEY, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## BART F. VIRDEN, Judge

The Greene County Circuit Court terminated the parental rights of appellant Nicholas Burks, Sr. to his children, N.B. and Z.B. On appeal, Burks argues that the circuit court erred in terminating his rights to Z.B. because the Arkansas Department of Human Services (DHS) and the attorney ad litem (AAL) failed to establish that he is Z.B.'s "parent." Burks further argues that there was insufficient evidence to support the termination as to both children on the aggravated-circumstances ground and asserts that termination of his parental rights was premature. Burks does not appear to challenge the circuit court's finding that termination is in his children's best interest. We affirm in part and reverse and remand in part.

## I. *Background*

On April 30, 2020, Sarah Speaight, a DHS family-service worker, went to the home of Burks and Megan Fields, N.B. and Z.B.'s mother, in search of a child involved in a separate case. Upon seeing the condition of the home, Speaight became concerned for N.B.'s and Z.B.'s safety because the home was dirty and cluttered "to the point of being hazardous to two young children." When Speaight learned that Burks had an open differential-response case involving allegations of drug use, she asked Burks to submit to a drug screen. Burks refused and locked the DHS caseworkers out of the home. When Speaight told the parents that she was placing a seventy-two-hour hold on N.B. and Z.B., Burks and Fields fled with the children through a back door. The children were located several days later and taken into DHS custody. DHS filed a petition for emergency custody and dependency-neglect as to then four-year-old N.B. and three-year-old Z.B. Attached to the petition was Speaight's sworn affidavit attesting to the above facts and identifying Burks as the legal father of both N.B. and Z.B. Referring to Burks's status as the parent, Speaight wrote that "[t]his is reflected in court orders from previous foster care cases in 2016 and 2019."

The circuit court entered an ex parte order for emergency custody of N.B. and Z.B. and appointed legal counsel to represent both Burks and Fields and an AAL to represent the children. On May 6, the circuit court found that the probable cause that necessitated the emergency removal of the children from the parents' custody continued to exist and that the children would remain in DHS custody. The circuit court issued the standard welfare orders and additionally ordered Burks and Fields to submit to random drug screens and to a

drug-and-alcohol assessment if they tested positive. They were warned that any refusal to submit to a drug screen would be considered a positive result and that they must follow the recommendations of any assessment.

On August 6, the circuit court held an adjudication hearing and on September 22 entered an order finding that N.B. and Z.B. were dependent-neglected juveniles based on inadequate supervision, environmental neglect, and parental unfitness. The circuit court found that Burks is a "parent to [N.B.] for purposes of the Arkansas Juvenile Code because his paternity was established in a prior DN case" but that Burks "needs to establish paternity as to [Z.B.]" and "shall . . . submit to DNA testing." Burks thereafter did not submit to DNA testing and did not petition to establish paternity.

On September 30, the circuit court held a hearing on the AAL's June 29 petition to terminate parental rights and entered an order terminating the rights of both Burks and Fields on the basis of aggravated circumstances in that there was little likelihood that services to the family would result in successful reunification. Burks appealed from the termination, but Fields did not; therefore, the mother is not a party to this appeal.

## II. *Standard of Review*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2020), an order forever terminating parental rights shall be based on clear and convincing evidence of one or more grounds. Ark. Code Ann. § 9-27-341(b)(3)(B). Proof of only one statutory ground is sufficient to terminate parental rights. *Bridges v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 50, 571 S.W.3d 506. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the child, including consideration of the likelihood that

the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, termination–of–parental–rights cases are reviewed de novo. *Wright v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 263, 576 S.W.3d 537. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.* We must also defer to the superior position of the circuit court to weigh the credibility of the witnesses. *Bridges*, *supra*. The circuit court is in a far superior position to observe the parties before it. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

### III. *Discussion*

### A. Z.B.'s "Parent"

"Parent" means a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an

4

acknowledgment of paternity pursuant to section 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile. Ark. Code Ann. § 9-27-303(41) (Repl. 2020). Burks argues that both DHS and the AAL failed to prove that he is Z.B.'s "parent." Burks did not make this argument below, but in a civil bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431 S.W.3d 303. We have said that establishing status as a parent is a "common sense element." *Terry v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 591, at 7, 591 S.W.3d 824, 829. Burks contends that no evidence was presented demonstrating that the issue of paternity had been resolved as to Z.B. and that the circuit court did not make a finding that he is Z.B.'s parent. Burks relies on *Earls v. Arkansas Department of Human Services*, 2017 Ark. 171, 518 S.W.3d 81, and *Northcross v. Arkansas Department of Human Services*, 2018 Ark. App. 320, 550 S.W.3d 919.

In *Earls*, DNA testing in a dependency-neglect proceeding revealed that Earls was the biological father to twins, and the circuit court later appointed legal counsel to represent him; however, he was consistently recognized as a putative father, including in DHS's petition to terminate his parental rights. At the termination hearing, the circuit court noted that Earls's status as a parent needed to be addressed, and there was a short colloquy regarding his status, but no order was entered finding him to be the twins' parent. In fact, the circuit court listed him as the putative father in the order terminating his parental rights. This court affirmed the termination. On a petition for review, the Arkansas Supreme Court reversed and remanded, holding that the circuit court had failed to establish the father's status as a

"parent" to the twins and thus could not terminate his rights. The supreme court noted that there was no order in the record establishing Earls's legal status.

In *Northcross*, the circuit court ordered the father to submit to DNA testing and to establish paternity. In an amended termination petition, DHS argued that DNA testing revealed that Northcross was the biological father; he had been appointed counsel at the permanency-planning hearing; and he had sufficient contacts with the children. DHS asked for a specific finding whether parental rights had attached. The circuit court terminated the father's rights without ever making a finding that he was the parent. The circuit court treated Northcross as a putative father even in the termination order. This court, relying on *Earls*, reversed the termination order and held that, without a finding establishing his status as a parent, Northcross's rights could not be terminated. We said, "This court cannot make a finding regarding paternity when the circuit court deliberately did not do so." *Northcross*, 2018 Ark. App. 320, at 13, 550 S.W.3d at 925. This statement referred to the circuit court's having reopened the hearing to comment that Northcross had not petitioned to establish paternity.

In *Tovias v. Arkansas Department of Human Services*, 2019 Ark. App. 228, 575 S.W.3d 621, this court reversed a termination order because there was insufficient evidence to support a finding that Tovias was a "parent." In a permanency-planning order, the circuit court had found Tovias to be the "legal father"; however, there was "absolutely no basis in the record to support" the finding, and the circuit court had frequently interchanged the terms "legal father" and "putative father." *Id.* at 9–10, 575 S.W.3d at 626. This court said that "Tovias's status as 'legal father' is murky at best." *Id.* at 10, 575 S.W.3d at 626.

DHS points out that, in arguing on appeal that he was not shown to be Z.B.'s parent, Burks is taking an inconsistent position from when he was before the circuit court. DHS also argues that Burks was identified as a parent and treated as a parent but that, at minimum, he was a putative parent because he claimed to be Z.B.'s father. "Putative father" means any man not deemed or adjudicated under the laws of the jurisdiction of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile. Ark. Code Ann. § 9-27-303(48). DHS asserts that Burks had the burden to establish paternity pursuant to Ark. Code Ann. § 9-27-325(n)(4); *see also M.S. v. Ark. Dep't of Human Servs.*, 2021 Ark. App. 77, 617 S.W.3d 731. According to DHS, the circuit court's adjudication order "is the one and only document in the record which clouds Burks's parental status." DHS asserts that the order is unclear and that any ambiguity should be resolved in favor of finding Burks to be Z.B.'s parent given the child's need for permanency.

In *Terry*, *supra*, this court said that "a lay person's reference to himself as a father—or even a DNA test showing a 99.9% probability that a man is the biological father of a child— is insufficient to establish 'parent' status for purposes of the termination process until and unless there is *an express finding by the circuit court* that the man is, in fact, a parent." *Terry*, 2019 Ark. App. 591, at 8, 591 S.W.3d at 829 (emphasis in original). In *Terry*, this court also rejected a similar inconsistent-position argument put forth by DHS.

We are further not convinced by DHS's argument that section 9-27-325(n)(4) means that Burks had the burden to prove that he is Z.B.'s parent. He had the burden *to establish paternity*, but DHS and the AAL had the burden of proving that he is the parent for purposes

7

of terminating his rights under the aggravated-circumstances ground. His status as the parent is an element of proof, and the burden of proof is on the petitioner. Moreover, the AAL did not petition to terminate Burks's parental rights under the new ground in section 9-27-341(b)(3)(B)(x), when a putative parent has not established paternity or significant contacts with his or her child after (a) being named and served as a party in a dependency-neglect proceeding; or (b) receiving notice of a dependency-neglect proceeding.

The AAL's approach to Burks's argument is different. The AAL argues that Burks was declared to be, and treated as, the legal father of both N.B. and Z.B. at the outset of the case—from the DHS caseworker's sworn affidavit to the orders in which the circuit court referred to Burks as the father and the parent. The AAL points out that Burks himself testified that Z.B. is his daughter. According to the AAL, Burks induced, consented to, or acquiesced in his treatment as a parent and cannot now complain. The AAL contends that *Earls* and *Northcross* are distinguishable in that Burks was never a putative father; rather, he was the father when the children were taken into custody, he was the father when he was provided legal counsel, he was the father when he was provided services and visitation with his children, and he was the father according to his own testimony. The AAL relies on several cases; however, those cases are distinguishable.

In *Brown v. Arkansas Department of Human Services*, 2018 Ark. App. 104, 542 S.W.3d 899, we affirmed a termination order because the father had consented to, or acquiesced in, the circuit court's finding that his parental status had been determined in its prior review order in a dependency-neglect proceeding. Here, despite the DHS caseworker's sworn affidavit attesting that Burks is the legal father of both N.B. and Z.B. based on previous

8

cases, the circuit court appears to have rejected that assertion and ordered that Burks establish paternity as to Z.B.

In *Johnson v. Arkansas Department of Human Services*, 2018 Ark. App. 221, 547 S.W.3d 489, we affirmed a termination order and held that the evidence showed that the father was a parent. Johnson argued, essentially, that the failure to enter an order equated to a lack of proof that he was the child's "parent," as required by the statute. We rejected that argument because the circuit court had ordered Johnson to establish paternity and said that services would begin once DNA testing confirmed that he was the biological father. Following the DNA results, the circuit court added Johnson as a party to the style of the case. In its termination order, the circuit court stated, "Regarding [appellant], he was putative father of the child at the time the child was taken into care. He was ordered to receive services identical to those offered to Mother. Additionally, he completed a referred DNA test that showed him to be the biological father of the child." *Id.* at 13, 547 S.W.3d at 498. We said that, in light of the facts in that case, we could not hold that DHS failed to prove, or that the circuit court failed to find, that Johnson was the child's "parent." *Id.* Here, the circuit court named Burks as a party and appointed him legal counsel, but then the circuit court made an issue of the fact that his parental status had not been determined as to Z.B. And, thereafter, the circuit court made nothing that could even be construed as a finding, and, in fact, heard no evidence upon which it could find, that Burks is Z.B.'s parent.

In *Thacker v. Arkansas Department of Human Services*, 2019 Ark. App. 379, 585 S.W.3d 698, the circuit court found that Thacker was the "non-custodial parent who is a legal parent" in the adjudication order and found that the allegations in DHS's petition for

9

emergency custody were true and correct. Similarly, the AAL argues here that the circuit court identified Burks as the noncustodial parent and said that he had contributed to the dependency-neglect of the children. *Thacker* is distinguishable, however, in that an affidavit attached to DHS's petition for emergency custody indicated that Thacker had been married to the child's mother from January 5, 2010, through February 17, 2012, and that B.T. was born in June 2011. Further, at the termination hearing, the family-service worker testified that B.T. had been born during the marriage. Here, there was no evidence that Burks was married to Fields at the time of Z.B.'s birth. There was some reference to prior orders, but those orders were not introduced into evidence, and the circuit court specifically found that Burks needed to establish paternity—despite those prior orders.

In summation, even though the circuit court treated Burks as a parent by making him a party, referring to him as the father and the parent, appointing him legal counsel, and ordering DHS to provide him services and visitation, the circuit court itself pointed out that Burks's legal status as Z.B.'s parent had not been established. The circuit court apparently did not accept the contents of Speaight's sworn affidavit, and those prior orders that were referenced in the affidavit were not introduced into evidence. So after making Burks's legal status an issue, the circuit court did not resolve the matter before terminating Burks's parental rights to Z.B. According to supreme court precedent in *Earls*, the circuit court is required to make a specific finding that Burks is Z.B.'s parent before terminating his rights. Accordingly, we reverse and remand the order as it relates to Z.B. for proceedings not inconsistent with this opinion.

## B. Aggravated Circumstances

There was an express finding that Burks is N.B.'s parent; therefore, we address the aggravated-circumstances ground found by the circuit court to support termination of Burks's parental rights as to N.B. Aggravated circumstances, among other things, means that a determination has been made by a court that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)* & *(B)(i)*. This type of aggravated circumstance occurs when a parent is not following through with offers of assistance; the parent is not completing basic goals of the case plan; and there is a lack of significant progress on the parent's part. *Wright v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 263, 576 S.W.3d 537.

Burks argues that there was insufficient evidence to support the aggravated-circumstances ground and that the AAL's petition to terminate his parental rights was premature. He asserts that much was made at the termination hearing of his prior history with DHS. Burks points out that he was not given a drug-and-alcohol assessment with respect to the second dependency-neglect case and that he was not given a referral for inpatient drug treatment with respect to the present case despite the acknowledgement that substance abuse was the primary reason for removal of the children. According to Burks, had DHS focused on this one crucial service and given him a full year to rehabilitate himself, there was a real chance that he could have reunited with his children. Burks asserts that the circuit court could not predict that there is little likelihood that services would result in reunification until time is allowed for the appropriate services to be provided to him.

Burks admitted at the termination hearing that he had been using drugs for nine years, primarily marijuana, but sometimes methamphetamine. Speaight testified that Burks refused drug screens on April 30 and May 4 and 21; he tested positive for methamphetamine and amphetamines on May 5; and he tested negative on August 12. Burks said that he had sought drug treatment many times and that, after receiving drug rehabilitation in 2014, he had stayed sober for sixteen months. Speaight discussed with Burks the results of his drug-and-alcohol assessment in which it had been recommended that he attend thirty-six outpatient classes. According to Burks, he attended one or two. *Kloss v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725 (affirming termination on aggravated-circumstances ground when father had persistent and unresolved drug issues, admitted having a drug problem, and failed to follow through with drug treatment after completing an assessment).

The evidence revealed that Burks has an extensive history with DHS. N.B. had been placed in foster care in 2016, and both N.B. and Z.B. were in foster care in 2019. There was a protective-services case in 2017 as to Z.B. In fact, the children had been returned to Burks's custody for only three months when they were removed again in connection with the present case. In the previous cases, Burks had participated in services, followed the case plan, and regained custody of his children. Speaight testified that there were no other services that DHS could provide to Burks to accomplish reunification. *Trogstad v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661 (affirming termination because aggravated-circumstances ground was supported by evidence that the mother had an

extensive history with DHS and that there were no further services that could assist with reunification).

Unlike the previous cases in which Burks took advantage of the services offered, Burks did not cooperate with DHS in the provision of services in the present case to the point that he did not even visit with his children. While there were twenty-two scheduled visits, Burks attended one four-hour visit and, according to Speaight, left after two hours without explanation. Burks claimed that he had left thirty minutes early because he had a job interview. Burks testified that he also had two Zoom visits with his children. *Musick v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 87, 595 S.W.3d 406 (affirming termination on aggravated-circumstances ground because the fact that mother had missed twenty to twenty-five visits with her children showed that her interest in reunification was questionable).

By the time of the termination hearing, Burks was incarcerated on multiple felony charges with no scheduled trial date. *Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595 (evidence supported finding that there was little likelihood of reunification given father's persistent criminal misconduct for which he was incarcerated for the majority of the case). Burks was also still in a relationship with Fields, a drug addict who did not appeal the termination of her parental rights. Burks even suggested that he had since married Fields by referring to her as "Mrs. Burks." *Musick*, *supra* (finding support for aggravated-circumstances ground when there was proof that the mother was in a relationship with a man whom she knew to be a drug addict).

Burks had been ordered to follow the recommendations of the drug-and-alcohol assessment. Instead of attending thirty-six outpatient classes, he attended only one or two

13

and complains that he should have been offered inpatient drug treatment. Inpatient drug treatment, however, was not recommended. Aside from failing to undergo the recommended drug treatment, Burks was neither working nor benefiting from the case plan. The aggravated-circumstances ground does not require that DHS show that meaningful services toward reunification were provided. *Willis v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 559, 538 S.W.3d 842. Also, with respect to Burks's argument that termination was premature, there is no time component to the aggravated-circumstances ground as there is with, for example, the one-year failure-to-remedy ground. Moreover, consideration can and should be given to the fact that these children have been in foster care off and on since they were born. *Williams v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 622 (the circuit court is free to consider the parent's actions in previous dependency-neglect proceedings in determining the appropriateness of termination). We cannot say that the circuit court's termination of Burks's parental rights as to N.B. on the aggravated-circumstances ground was clearly erroneous.

Affirmed in part; reversed and remanded in part.

BARRETT and VAUGHT, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.