Cite as 2023 Ark. App. 168

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-22-665

| | |
|---|---|
| | **Opinion Delivered** March 29, 2023 |
| ALICIA WOMACK | |
| APPELLANT | APPEAL FROM THE SHARP COUNTY CIRCUIT COURT [NO. 68JV-21-77] |
| V. | |
| | HONORABLE ADAM G. WEEKS, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Alicia Womack appeals the circuit court's termination of her parental rights to her two children. (The circuit court also terminated the parental rights of the children's father, but he is not a party to this appeal.) She argues that the circuit court erred in finding that termination was in the children's best interest because there was a less restrictive option available. We affirm the circuit court's order.

On 17 March 2021, the Sharp County Circuit Court ordered the Arkansas Department of Human Services (DHS) to open a family-in-need-of-services case on the Womack family based on possible drug use and because one of the children, seven-year-old Minor Child 1, had missed a substantial amount of school. The family's home was assessed on March 31, and Womack tested negative for illegal substances. Womack's boyfriend, Bradley Tucker, was present at the assessment and tested positive for methamphetamine,

amphetamines, and THC. The circuit court ordered that there be no contact between the children and Tucker.

On April 13, Womack was arrested for driving under the influence, and on April 14, she tested positive for methamphetamine and amphetamines. DHS implemented a protection plan, and the maternal grandmother, Cindy Parrish, agreed to move into the home and supervise all contact between Womack and the children. The protection plan required Womack to contact Mid-South Behavioral Health to expedite an assessment, attend AA/NA/Celebrate Recovery meeting two times a week, and start the process of developmental testing for two-year-old Minor Child 2. On April 16, DHS advised the circuit court of the protection plan and requested an emergency order for protection of juveniles from immediate danger. The court granted the order and imposed the protection plan via court order.

Twelve days later, on April 28, DHS petitioned for emergency custody of the children. The affidavit attached to the petition explained that Womack's assessment at Mid-South recommended inpatient treatment after she tested positive for methamphetamine, amphetamine, and benzos. DHS told her that she had to complete drug treatment, otherwise the children would be taken into care. Womack entered inpatient treatment but left after a few days, stating that it "was not a good fit for her" and that she preferred faith-based treatment. She also reported that she had married Bradley Tucker, the subject of the earlier no-contact order. DHS arranged for Womack's admittance to a faith-based treatment program, and she initially agreed to go, but she later delayed leaving for treatment. Womack's demeanor was very agitated and uncooperative, so DHS decided to exercise a

2

seventy-two-hour hold on the children. Womack was not present when DHS arrived at the home, but she continued to be belligerent and uncooperative through phone conversations. DHS removed the children due to the following safety factors: (1) "caretaker's current substance use seriously affects his/her ability to supervise, protect, or care for the child", and (2) "caretaker's emotional stability seriously affects current ability to supervise, protect, or care for the child."

The circuit court granted the petition for emergency custody and later found probable cause to continue DHS's custody of the children. After a hearing on June 1, the court adjudicated the children dependent-neglected based on neglect and parental unfitness. The court set the goal of the case as reunification with the concurrent goal of relative placement.

The court reviewed the case in September 2021 and found that Womack was partially compliant with the case plan. She was participating in outpatient drug treatment and continued to test negative on drug screens, but she remained unemployed and missed several visits with the children due to COVID-19 and an eviction. The court conducted another review in November 2021 and again found that Womack was partially compliant. She missed a hair-follicle test on October 11; on October 18 and October 28, she tested positive for methamphetamine and amphetamine. She remained unemployed and had not visited the children since July 28.

In April 2022, the circuit court convened a permanency-planning hearing. In its subsequent order, the court described Womack as minimally compliant and changed the goal of the case to authorizing a plan for adoption with DHS filing a petition to terminate

parental rights. The court noted that Womack had begun an inpatient program in November 2021 but did not complete it and that she had begun another inpatient program on 24 March 2022.

DHS petitioned to terminate parental rights, and the circuit court held a hearing on 31 May 2022, at which the following pertinent testimony was offered. Paula Woodside, the primary caseworker, testified that the children were currently placed with a relative and that adoption by this relative was a possibility. Womack testified that the children were currently placed with their paternal aunt (her ex-husband's sister) and stated, "I'm glad they're safe. I thank her for taking care of them while I was going through all this, but I do want 'em back." She asked the court to change the goal of the case back to reunification. After hearing all the testimony and arguments from counsel, the court announced that Womack's parental rights would be terminated. The circuit court entered its written order in July 2022, and Womack has timely appealed.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the child, taking into consideration (1) the likelihood that the child will be adopted if the termination petition is granted, and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021). The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B).

Termination-of-parental-rights cases are reviewed de novo. *Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Williams v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 622. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Camarillo-Cox v. Ark. Dep't of Hum. Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

On appeal, Womack asserts that the circuit court erred in terminating her parental rights because there was a less restrictive option available—permanent custody with the children's paternal aunt. Arkansas Code Annotated section 9-27-329(d) (Supp. 2021) provides that in initially considering the disposition alternatives and at any subsequent hearing, the court shall give preference to the least restrictive disposition consistent with the best interest and welfare of the juvenile. A circuit court is permitted to set termination as a goal even when a relative is available and requests custody. *King v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 126, 620 S.W.3d 529. This is because the Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the juvenile is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest. *Id.*

5

Womack argues that termination was not necessary to achieve permanency for the children because the circuit court could have granted the paternal aunt, who was fostering the children, a guardianship or permanent custody. The children's situation would not have changed, and they could continue to see their father and Womack (at their aunt's discretion). Now, in spite of the fact that the father's rights have been terminated, he will continue to see the children at his sister's home, but Womack will not have the same opportunity. Womack also asserts that the circuit court failed to address how the children's placement with a relative affected the best-interest analysis.

DHS responds that Womack's argument is not preserved for appellate review because she did not obtain a ruling on it before the circuit court. Even if this argument had been preserved, DHS argues, it would fail, because the children are with a paternal relative, and the children's father did not appeal the termination of his rights. *See Migues v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 439, at 11, 586 S.W.3d 221, 228 ("Here, the relatives in question were paternal relatives; therefore, any rights and relationship of the paternal relatives were not derivative of appellant's relationship with A.T.").

We hold that Womack's failure to raise this argument below renders it unavailable for review on appeal. *See Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218 (mother failed to preserve for appellate review her argument that circuit court erred in not considering alternatives for permanency less restrictive than termination of her parental rights, where mother did not make argument at termination hearing). We have held that even in termination cases, we will not address issues raised for the first time on appeal.

6

*McElroy v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 117, 432 S.W.3d 109. Thus, we affirm the circuit court's order terminating Womack's parental rights.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.