Cite as 2026 Ark. App. 41

# ARKANSAS COURT OF APPEALS

DIVISION I
No.  CV-25-476

| | |
|---|---|
| | Opinion Delivered January 21, 2026 |
| OTAYSHA BROOKINS | |
| | APPEAL FROM THE PULASKI |
| APPELLANT | COUNTY CIRCUIT COURT, TENTH DIVISION |
| V. | [NO. 60JV-22-331] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE SHANICE JOHNSON, JUDGE |
| APPELLEES | |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant, Otaysha Brookins, appeals the Pulaski County Circuit Court's order terminating her parental rights to her two children, Minor Child 1 (MC1) (DOB 07/28/17) and Minor Child 2 (MC2) (DOB 06/24/21).[1] On appeal, Brookins argues there was insufficient evidence to support the statutory grounds for termination and that the circuit court erred in finding that termination was in MC1'S and MC2's best interest.

This is the second appeal by Brookins from an order terminating her parental rights to MC1 and MC2. In *Brookins I*, we reversed and remanded the case and held that no petition to terminate Brookins's parental rights was before the circuit court when the termination

---

[1]Deonte Goodloe, executed a waiver of parental rights and terminated any rights he might have had to MC2. Goodloe is not a party to this appeal.

order was entered; therefore, this court reversed the order terminating Brookins' parental rights and remanded for proceedings consistent with its decision by mandate filed November 19, 2024.[2] On January 24, 2025, the Department of Human Services ("DHS") and the attorney ad litem filed a joint petition for termination of parental rights. On March 24, a termination-of-parental-rights hearing was held by the Pulaski County Circuit Court in which Brookins's parental rights were terminated. Brookins now appeals from the circuit court's order on remand. We affirm.

## I. *Relevant Facts*

The petition to terminate Brookins's parental rights alleged three grounds for termination: (1) failure to remedy, (2) subsequent factors, and (3) aggravated circumstances. Although it is not included in *Brookins I*, we note that the record reflects that the minor children tested positive for methamphetamine, cocaine, a by-product of cocaine, and THC at beginning of this case.

On January 29, the circuit court held a review hearing. The circuit court set the goal as adoption with a concurrent goal of reunification with Brookins. The circuit court found that Brookins had not been offered services since the mandate was issued and was unable to address her compliance with the case plan. The circuit court found DHS partially compliant with the case plan and court orders and ordered one hour of supervised visitation a week

---

[2]For relevant factual background, procedural and factual history *see Brookins v. Arkansas Department of Human Services*, 2024 Ark. App. 508, 700 S.W.3d 496 (*Brookins I*).

2

between Brookins and the minor children that was to increase after four weeks if no health or safety concerns arose.

At the termination hearing, Sgt. Jessica Ezell testified that she works for the Pulaski County Sheriff's office and maintains the inmate phone calls for the jail. Ezell explained the system that records inmate phone calls and how she retrieved the recordings and data for a jail call log between Goodloe and Brookins. Katie Crosby, a therapist, testified as an expert witness in childhood-developmental trauma. Crosby supervised two visits with the children and terminated one visit in March 2025 after Brookins confronted MC1 about a disclosure he made about her that resulted in a call to the child-abuse hotline by his foster parents. Crosby further testified that Brookins was aggressive when the children were removed, that the experience was clinically traumatic for the children, and Brookins physically prevented the children from leaving the room while she was yelling at the DHS caseworker. On cross-examination, Crosby testified that MC1 had disclosed to his foster parents that Brookins had placed MC2 into a freezer as a newborn.

Brookins testified that her sister had taken the July 14, 2023, hair-shaft drug screen on her behalf, which tested positive for methamphetamine and amphetamines, and claimed DHS altered the results. She stated she did not participate in any services after the first termination-of-parental-rights hearing and did not complete additional counseling because the therapist was unprofessional, and the initial paperwork went to her spam folder. Brookins scheduled three drug assessments but canceled two and did not complete a hair-shaft test until March 14, 2025, because she wanted to do it on her "own time."

3

Brookins accepted responsibility only for questioning MC1 and the altercation with Wanisha Kizer, the DHS caseworker, at the March 2025 visit. She testified that she had not had contact with Goodloe since July 2023, she had a job, and she had been approved for housing. Brookins also admitted she tested positive for marijuana before the hearing even though she did not have a medical marijuana card and was on probation.

Kizer testified about Brookins's behavior during visitations, the services referred to Brookins, Brookins's lack of cooperation, the children's ongoing need for DHS custody due to Brookins's instability, and her continued contact with Goodloe. Kizer testified there would be potential harm if the children returned to Brookins's care because the children had not been in her care for over twelve months, she was unfit, she was not stable, and the children could potentially be exposed to drugs. Kizer also testified that Brookins had not made progress on the issues that led to the children's removal. She testified it was in the children's best interest to terminate Brookins's parental rights. During Kizer's direct examination, the audio recordings from the jail calls between Goodloe and Brookins were played showing there had been continuous contact between the two of them from November 2022 to July 2023.

Mary Glenn, an adoption specialist, testified the children are adoptable despite needing counseling for physical and verbal aggression and sixty-seven families were potentially willing to adopt both children together.

On April 7, 2025, the circuit court terminated Brookins's parental rights under the following grounds: (1) failure to remedy; (2) subsequent factors; and (3) aggravated

circumstances. The circuit court also found termination to be in the children's best interest. On May 13, 2025, the circuit court entered an order reflecting its termination decision.

## II. *Standard of Review*

We review termination-of-parental-rights cases under a de novo standard. *Burks v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 309, 634 S.W.3d 527. This court will not reverse the finding of a circuit court unless it is clearly erroneous. *Id.* A finding is clearly erroneous when the reviewing court, upon reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* Deference is given to the finder of facts for determinations of credibility. *Id.*

An order terminating parental rights shall be supported by a finding that is based on clear and convincing evidence, that at least one statutory ground exists, and termination is in the best interest of the child. Ark. Code Ann. § 9-27-341(b)(3).[3] Clear and convincing evidence is a degree of proof that will produce in the fact-finder a firm conviction about the allegation sought to be established. *Hooks v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 687, at 9, 536 S.W.3d 666, 672.

## III. *Discussion*

---

[3]Act 518 of 2025 repealed the Juvenile Code. Former Ark. Code Ann. § 9-27-341 governed this issue at the time. Its provisions are now codified at Ark. Code Ann. § 9-35-325 (Supp. 2025). At the time of the order being appealed, the current legislative change was not in effect. Therefore, the previous version of the Code is relied on in this case and opinion.

On appeal, Brookins challenges all three statutory grounds––failure to remedy, subsequent factors, and aggravated circumstances. However, because proof of only one ground is sufficient to support termination, we address only the failure-to-remedy ground. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

Under Arkansas law, to prove the failure to remedy ground DHS must show (1) the child was adjudicated dependent-neglected; (2) the child continued to be out of the custody of the parent for twelve months; and (3) the parent failed to remedy the cause of removal despite meaningful efforts by DHS to rehabilitate the parent and correct the issue that caused the removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i).

Brookins does not dispute the fact that the children were adjudicated dependent-neglected and continued out of her custody for twelve months. Rather, she argues DHS failed to make meaningful efforts or provide timely and appropriate services. She also contends that the domestic-violence and drug-related issues that existed at removal had been remedied. Here, DHS provided Brookins with parenting and individual counseling, a referral to 100 Families, a drug-and-alcohol assessment, an outpatient referral, drug screens, transportation, medical services, and educational services. Although the Juvenile code provides timelines for hearings, it does not require DHS to offer or complete services within a specific time frame. In July 2023––nearly two years before the termination hearing––the circuit court found that DHS had made reasonable efforts to provide Brookins with reunification services. Brookins also testified at the termination hearing that more than one service had been provided to her.

Brookins further asserts there is no evidence of ongoing domestic-violence issues because she ceased contact with Goodloe in July 2023 after she started to receive therapy services from DHS; however, the circuit court did not find her testimony credible and determined that the domestic-violence issue had not been remedied. Additionally, Brookins admitted to her continued use of marijuana, without a prescription, despite the circuit court's order prohibiting illegal drug use. A person's failure to take responsibility for his or her actions supports a finding that the behavior that caused the removal has not been remedied. *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, at 10, 660 S.W.3d 357, 366. Accordingly, Brookins failed to remedy the issues that led to the children's removal.

Sufficient evidence supports the circuit court's finding that Brookins failed to remedy the causes of removal despite meaningful efforts by DHS. Therefore, because the circuit court did not err in terminating Brookins's parental rights based on the failure-to-remedy ground, we affirm.

In her second point on appeal, Brookins challenges the circuit court's best-interest finding. To determine whether it was in the child's best interest to terminate a parent's rights, the court must consider (1) the child's likelihood of adoption and (2) the potential harm to the child if returned to a parent's care, considering specifically the health and safety of the child. Ark. Code Ann. § 9-27-341(b)(3)(A).

Brookins argues that the circuit court's potential-harm finding is erroneous because there is no evidence of an actual risk. However, the circuit court is not required to find actual harm or identify a potential harm. *Edwards v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 37,

7

at 8, 480 S.W.3d 215, 220. Evidence of potential harm is viewed in a forward-looking manner and considered in broad terms. *Id.*

Brookins's continued use of illegal drugs poses a risk of harm to the children if returned to her. *See id.* Additionally, Brookins's past behaviors, communicating with Goodloe despite physical abuse toward her and the children, may be viewed as predictors of potential harm. *Cox v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 525, at 18, 701 S.W.3d 5, 16. Therefore, it was not clearly erroneous for the circuit court to conclude that potential harm could exist if the children were returned to Brookins's care.

Finally, Brookins challenges the circuit court's adoptability finding, arguing termination was not in the children's best interest because DHS failed to consider placement with relatives and did not use diligence to identify and provide notice to potential relatives. However, because Brookins failed to make this argument to the lower court, she is prevented from now arguing it on appeal. It is well settled we will not address arguments made for the first time on appeal. *Alexander v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 536, 679 S.W.3d 450.

Even if preserved, the argument would still fail. The circuit court found that DHS had exercised due diligence in identifying and vetting all biological relatives, and the only approved relative declined placement because she lacked a relationship with the children. No other relative was deemed fit for placement and willing to move forward.

The circuit court's determination that it was in MC1's and MC2's best interest to terminate Brookins's parental rights was not clearly erroneous, and therefore, we affirm.

8

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.