Cite as 2026 Ark. App. 234

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-25-637

| | |
|---|---|
| JOSHUA CAGLE | Opinion Delivered: April 15, 2026 |
| APPELLANT | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT [NO. 33JV-23-74] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE LEE WISDOM HARROD, JUDGE |
| | AFFIRMED |
| APPELLEES | |

### STEPHANIE POTTER BARRETT, Judge

Appellant, Joshua Cagle ("Joshua"), appeals the Izard County Circuit Court's order terminating his parental rights to his child, Minor Child ("MC") (DOB 11/11/23). On appeal, Joshua argues that the circuit court erred in finding that termination was in MC's best interest. We affirm.

On November 30, 2023, the Arkansas Department of Human Services ("DHS") filed a petition for emergency custody and dependency-neglect in the Izard County Circuit Court regarding Joshua, Shelby Cagle ("Shelby"), and MC after MC tested positive for 6-acetylmorphine (a metabolite of heroin), amphetamines, codeine, fentanyl, methamphetamine, and morphine. Shelby tested positive for methamphetamine, opioids, and marijuana. DHS exercised a seventy-two-hour hold, and that same day, the circuit court

entered an ex parte order granting emergency custody. At the time of the hold, MC was approximately three weeks old, and Shelby had died after suffering a stroke at the time of MC's birth.

After his birth, MC was transferred to Arkansas Children's Hospital (ACH). DHS was notified by the hospital and anonymous family members that Joshua was reported to be under the influence of illegal substances at the hospital, and his behavior was erratic. During this time, Joshua was uncooperative with DHS. He missed meetings with DHS, and he refused to submit to drug screening. ACH further reported that while MC was in the hospital's care, Joshua's visits with him were inconsistent and brief.

On December 5, 2023, the circuit court held a probable-cause hearing, found that probable cause continued to exist, and that it was necessary and in MC's best interest to remain in DHS's custody.

On February 26, 2024, the circuit court held an adjudication hearing and found by a preponderance of the evidence that MC was dependent-neglected on the basis of Joshua's parental unfitness due to his substance abuse. The circuit court found the allegations in the emergency-custody petition true and correct and noted that Joshua was incarcerated in the Izard County jail at the time of the hearing. The goal of the case was reunification with a concurrent goal of placement with a relative.

On May 10 and July 16, 2024, the circuit court held review hearings and found that the goal remained reunification with a fit parent. At both review hearings, the circuit court

2

found that Joshua was not in compliance with the case plan due to his incarceration and awaiting trial on numerous felony charges.

On October 1, 2024, DHS filed a petition for termination of parental rights alleging three statutory grounds: (1) subsequent factors; (2) prison sentence for a substantial period of the child's life; and (3) aggravated circumstances. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*, (viii), (ix)*(a)(3)(A)* (Supp. 2023).[1]

The circuit court held a permanency-planning hearing on October 14, 2024, and changed the goal of the case to adoption. The circuit court found that Joshua, again, was not compliant with the case plan because he failed to make himself available to DHS before being jailed, did not participate in services for mental-health or substance-abuse treatment, did not maintain stable housing or employment before his incarceration, and was incarcerated after being sentenced on multiple drug charges.

A termination hearing was held on December 3, 2024. Joshua testified that he was incarcerated for possession of fentanyl, possession of methamphetamine, possession of marijuana, and a firearm charge and had been sentenced to sixteen years' imprisonment, with a transfer eligibility date of February 2027. Before he was jailed, Joshua was provided a case plan by DHS. He testified that he had a couple of home visits, went to the DHS office a couple of times, and submitted to a couple of drug tests. Joshua admitted that between the

---

[1] Act 518 of 2025 repealed the Juvenile Code. Former Ark. Code Ann. § 9-27-341 governed this issue at the time. Its provisions are now codified at Ark. Code Ann. § 9-35-325 (Supp. 2025). At the time of the order being appealed, the current legislative change was not in effect. Therefore, the previous version of the Code is relied on in this case.

birth of MC and his incarceration, he was using methamphetamine. However, at the time of the hearing, Joshua was sober. Joshua stated he saw MC "off and on" for about a week while MC was hospitalized at ACH after his birth. He had not had any visits with MC since his incarceration.

Joshua testified that his father and his father's wife were available to care for MC. He stated that his father was sixty-three years old, retired, and had the financial means to support MC. He also stated his mother had an interest in caring for MC, but she is disabled. Joshua further testified that he has two other children that had not lived with him for a couple of years and were living with their grandparents. Shelby's daughter from another relationship lives with Shelby's sister.

Susan Hale ("Hale"), the DHS family service worker, testified that she had been involved in the case from the beginning, and Joshua had been noncompliant with the case plan since before his incarceration. She stated that Joshua had been to her office once. She also testified that, before this case, there was a protective-services case opened in April 2023 regarding another child who had previously been in Shelby and Joshua's care. Hale stated that she spoke with Joshua's father, who lived in Tennessee, at the beginning of the case, and he expressed a desire for MC to be placed with Joshua's half sister. However, the half sister's husband had prior felony charges; therefore, she could not be considered for placement.

Hale further testified that MC was already placed with a fourth cousin in Arkansas because no other eligible relatives had come forward. She stated that MC had turned one in

4

November 2024, and Joshua had been incarcerated for a good portion of MC's life. She testified that her recommendation was to terminate Joshua's parental rights and that the placement was willing to adopt.

Mandy Hunt ("Hunt"), the DHS supervisor, testified that DHS had identified a relative at the beginning of the case and that MC was placed with the relative upon discharge from the hospital. That placement later requested that MC be moved because she had several children and could not manage additional caregiving at that time. Hunt testified that numerous relatives were considered for placement. Joshua's half sister was contacted; Joshua's mother was also contacted but was not considered for placement because she is disabled and has a caretaker herself. She further testified that Joshua's father contacted her several months after MC had been moved to his second placement and was informed that, because MC had been in DHS custody since the beginning of the case and had bonded in the current placement, DHS was not pursuing an out-of-state placement. She testified that the current placement was willing to adopt MC if Joshua's parental rights were terminated, and termination was in MC's best interest.

On cross-examination, she testified that it was in MC's best interest to achieve permanency through adoption and that MC is adoptable. She further testified that MC's foster parent wanted to adopt him, and Joshua had not done what was necessary to obtain custody or reunify with MC and had been uncooperative with DHS and continued to use drugs throughout the case.

On February 5, 2025, the circuit court granted the petition to terminate Joshua's parental rights. The circuit court found that termination of Joshua's parental rights was in the MC's best interest. The circuit court entered an order terminating Joshua's parental rights on July 31, 2025.

Termination-of-parental-rights cases are reviewed de novo. *Burks v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 309, at 4, 634 S.W.3d 527, 529. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when the reviewing court, upon reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the child, taking into consideration (1) the child's likelihood of adoption if the termination is granted and (2) the potential harm to the child if returned to a parent's care, specifically addressing the health and safety of the child. Ark. Code Ann. § 9-27-341(b)(3)(A). The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B).

On appeal, Joshua argues that there was insufficient evidence to support the circuit court's best-interest finding. He specifically contends that the circuit court clearly erred because a less restrictive alternative, such as a guardianship or permanent custody with a

relative, could have achieved permanency without terminating his rights. Joshua does not challenge the grounds relied on by the circuit court for termination; thus, this court does not need to review whether the circuit court erred in finding that statutory grounds existed. *See Prescott v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 213, at 5–6, 644 S.W.3d 460, 463–64.

Arkansas Code Annotated section 9-27-329(d) (Repl. 2020) provides, "In initially considering the disposition alternatives and at any subsequent hearing, the court shall give preference to the least restrictive disposition consistent with the best interests and welfare of the juvenile and the public."[2] Although the least-restrictive alternative is a relevant consideration at the termination-of-parental-rights hearing, it does not preclude termination. *See Lei'Keil v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 324, 714 S.W.3d 319. A circuit court is permitted to set termination as a goal even when a relative is available and requests custody. *Womack v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 168, at 5, 662 S.W.3d 737, 740 (citing *King v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 126, 620 S.W.3d 529).

Joshua relies on *Ivers v. Arkansas Department of Human Services*, 98 Ark. App. 57, 250 S.W.3d 279 (2007), for the proposition that a circuit court should consider alternatives to termination, when possible, to achieve permanency. However, *Ivers* is distinguishable. *Id.* In *Ivers*, the termination was clearly erroneous because the parent was in general compliance

---

[2]*See* Act 518 of 2025. Former Ark. Code Ann. § 9-27-329 governed this issue; its provisions are now codified at Ark. Code Ann. § 9-35-319 (Supp. 2025). For the reasons stated above, the prior version of the Code applies.

with every aspect of the case plan, and there was no evidence that reunification efforts would be unsuccessful. *Id.*

Here, by contrast, Joshua remained noncompliant throughout the case. He was incarcerated for much of the proceedings and, when not incarcerated, failed to comply with the case plan or services offered. Additionally, Joshua never had custody of MC, who was immediately placed in foster care after his birth. Unlike in *Ivers*, the record here does not demonstrate a viable path toward reunification that would justify delaying permanency. *Id.* Instead, it reflects no meaningful progress toward reunification and a child who has achieved stability in a relative placement willing to adopt.

The record further reflects that identified paternal relatives were considered but either did not request guardianship or were unsuitable for placement. MC was already placed with a maternal relative who expressed a desire to adopt him, supporting his need for permanency and stability. Under these circumstances, the circuit court was not required to select a less restrictive alterative over termination.

As this court has explained, when a parent fails to demonstrate stability and a reasonable hope for reunification, there is no reason to delay permanency through termination and adoption. *See Anderson v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 18, 658 S.W.3d 470; *Moore v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 4, 682 S.W.3d 706.

Joshua essentially asks this court to reweigh the evidence and reach a different best-interest determination. This court will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. *See Moore*, 2024 Ark. App. 4, at 10. Accordingly,

the circuit court did not clearly err in finding that termination of parental rights, rather than a guardianship or permanent custody, was in MC's best interest. Therefore, we affirm.

Affirmed.

TUCKER and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services Off. of Chief Counsel, for appellee.

*Janet Lawrence Blankenship*, attorney ad litem for minor child.